470 A.2d 952

**Governor Dick THORNBURGH and Jay C. Waldman, Appellants,**

v.

**H. Craig LEWIS, State Senator, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 1983.

Decided Dec. 30, 1983.

208

John P. Krill, Deputy Atty. Gen., for appellants.

Richard J. Welsh, Doylestown, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

■ The question in this appeal is whether the executive branch of our Commonwealth may, at the request of the Minority Chairman of the Senate Appropriations Committee, be required to supply certain budgetary information. We have jurisdiction of the appeal pursuant to 42 Pa.C.S. § 723(a), the matter having been brought within the Commonwealth Court's original jurisdiction. Because the facts are not in dispute, and there is no disagreement as to the choice of legal precepts, only their application, the standard of our review of the Commonwealth Court's interpretation of the applicable statutes is plenary.

On August 14, 1981, the Appellee, Senator H. Craig Lewis, acting in his capacity as Minority Chairman of the Senate Appropriations Committee, issued a request in writing to all Cabinet Secretaries of the Commonwealth of Pennsylvania for personnel information concerning individuals employed as Legal Counsel within each Department. He requested the name, city of residence, date of employment, salary range of position, current salary, salary at time of appointment, and terminations in complement since October 31, 1980. On August 18, 1981, the Appellee issued a similar request in writing to certain Directors of Executive Agencies, Authorities, and Boards, for personnel information concerning individuals or law firms retained as Legal Counsel, Bond Counsel, or Outside Counsel. Executive Deputy General Counsel to the governor, Robert S. Ross, Jr., issued a written directive to all Members of the Cabinet and Directors of Executive Agencies on August 21, 1981, requesting that no information be released in response to the aforementioned letters until the General Counsel, Jay Waldman (Appellant), had the opportunity to review the requests. On August 26, 1981, the Appellee directed a letter to Governor Richard Thornburgh (Appellant), protesting that this directive denied him budgetary information he was seeking in his capacity as Minority Chairman of the Senate Appropriations Committee. He

asked the Governor to rescind the directive in order to allow Cabinet Secretaries and Executive Agency Heads to respond to his request. Governor Thornburgh did not respond. On September 3, 1981, the Appellee renewed his request to all Cabinet Secretaries and Directors of Executive Agencies for personnel information as outlined in his original letters. On September 10, 1981, Mr. Ross wrote to the Appellee stating that his request for such information would be more appropriately addressed to the Office of General Counsel and the Office of Budget and Administration. He further informed the Appellee that these two offices were considering his request in light of other responsibilities and priorities. On September 16, 1981, Vincent P. Carocci, Executive Assistant to Senator Lewis, upon Appellee's direction issued an official request for the budgetary information to the Office of General Counsel. The Appellee renewed his request to the Governor on January 8, 1982. The Governor did not reply, but Appellant Waldman replied that the information had not been refused and offered Senator Lewis the opportunity to inspect personnel records in the Office of Budget and Administration.

The Appellee filed a Petition for Review in Commonwealth Court on October 15, 1981, requesting that the court, by way of specific relief, order the Governor and the General Counsel to provide him with the requested budgetary information. This appeal is taken from that court's Order of June 24, 1983 directing the Appellants to provide the Appellee with the requested data as specified in the Order.

Appellants first argue that the underlying question, whether the Governor is required to supply certain budgetary data on request of the Minority Chairman of the Senate Appropriations Committee, is a non-justiciable political question. The applicable legal precepts are not in dispute. In *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the United States Supreme Court enunciated guidelines useful in discerning whether a case presents a "political question." This Court has made use of those guidelines

in determining whether a given claim presents issues which the Court should refrain from deciding. *Zemprelli v. Davis*, 496 Pa. 247, 436 A.2d 1165 (1981); *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977).

In *Baker v. Carr* it was said that each of the several formulations which may be used to describe a political question

> has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217, 82 S.Ct. at 710.

The Appellants argue that each of the first three of these elements is apparent in this case. The first is said to exist because under the Pennsylvania Constitution the preparation, enactment, and ongoing review of the budget is a matter for the Governor and for the General Assembly, not for the Judiciary. The Appellants cite Article III of the Constitution as demonstrating that the General Assembly must enact the budget as it does any other legislation; Article IV, Sections 15 and 16 as showing that the Governor must approve or veto a budget bill, or disapprove only specific items of the bill; and Article VIII, Section 12 as imposing on the Governor the duty to submit his budget to the General Assembly. These provisions, argue the Appellants, present a "textually demonstrable constitutional commitment to a co-ordinate political department." This argu-

ment, however, is made in the abstract, in general terms. It says no more than that the question presented relates to budgetary matters, that the Constitution gives the Judiciary no role in the budgetary process, and that therefore the Court must refrain from deciding the question. This generality "obscure[s] the need for case-by-case inquiry," *Baker v. Carr*, 369 U.S. at 211, 82 S.Ct. at 706, and ignores this Court's responsibility as ultimate interpreter of the Constitution. *Zemprelli v. Daniels*, 496 Pa. at 255, 436 A.2d at 1169.

█ It is the province of the Judiciary to determine whether the Constitution or laws of the Commonwealth require or prohibit the performance of certain acts. That our role may not extend to the ultimate carrying out of those acts does not reflect upon our capacity to determine the requirements of the law. The Appellee asks the Court to direct the Governor to supply him with certain budgetary data. A decision that the Governor is required, or is not required, to do so would in no way involve the Judiciary in the role assigned to the General Assembly of enacting a budget, or in the role assigned to the Governor of preparing and approving a budget. It would merely determine the meaning of Constitutional and statutory provisions, precisely the role of the Judiciary in our tri-partite system of government.

Appellants also argue that the second and third elements identified in *Baker v. Carr* as common to "political questions" are apparent here—that this case is "lacking in any judicially discoverable and manageable standard for resolution," and that the case would be impossible to decide "without an initial policy determination of a kind clearly for nonjudicial discretion." This argument also proceeds in general terms and rests on the premise that "budgetary data" is an amorphous concept capable of varying interpretations depending upon the purpose of the analysis. Thus, the Governor and the members of the General Assembly might each have different interpretations of what comprises "budgetary data," or whether the information supplied has

been given "in reasonable detail," depending upon the reasons each finds for thinking that the information is or is not necessary. The conclusion drawn by the Appellants is that the Court would be required to assess these various reasons and choose among them to decide the question, and that this choice would necessarily involve non-judicial, "unprincipled" considerations.

Once again the generality of the Appellants' statement of their argument obscures the nature of the question to be answered. The Appellee did not simply request "budgetary data," nor does he ask the Court to devise guidelines for determining what is and is not to be included in a report of budgetary data. The request was highly specific, and it cannot seriously be contended that the information sought is not "budgetary data." The only question presented is whether the information sought is information which, by law, the Appellee is entitled to request and the Appellants are required to supply. Presented thus, the question does not implicate standards beyond the scope of judicial management, nor does its resolution require a prior determination of policy of a nature clearly within the realm of nonjudicial discretion.

"The cases ... show the necessity for *discriminating inquiry* into the *precise facts* and posture of the *particular case*, and the impossibility of resolution by any semantic cataloguing." *Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710 (emphasis added). The Appellants may not remove a claim from consideration by the Courts simply by raising the specter of judicial interference with legislative or executive discretion, or by claiming for themselves the power to interpret the limits of their Constitutional and statutory powers and duties. This Court will refrain from resolving a dispute where to do so would necessarily involve it in carrying out functions properly delegated to a separate branch of government. We will not refrain from resolving a dispute which involves only an interpretation of the laws of the Commonwealth, for the resolution of such disputes is our constitutional duty. We are persuaded by the Common-

wealth Court's application of the guidelines in *Baker v. Carr* to the facts of this case. The lower court found that a "textually demonstrable constitutional commitment of the issue to one branch for 'self monitoring,' (citation omitted) is plainly not present because the matter involves only the transmission of information, not the exercise of any executive or legislative power." *Lewis v. Thornburgh*, 75 Pa. Cmwlth. 207, 223, 462 A.2d 310, 319 (1983). That court also found no difficulty in discovering judicially manageable standards for resolving the question.

Although the Administrative Code section in this case merely requires the Governor to supply such budgetary data as may be requested, and the items listed in the request are quite explicit and unambiguous, respondents argue as if we were required to interpret and apply the provision of Pa. Const. art. 8, section 12, which requires the Governor annually to submit to the legislature projected operating expenditures "in reasonable detail." Although Administrative Code section 620(a) undoubtedly serves to implement the constitutional section in part, nothing in this case requires this court to resolve any degree of detail. The requests here quite specifically seek names, dates, places and dollar amounts of salaries or fees; there is nothing to interpret.

Nor can this court be excluded from considering the disclosure of information about the expenditure of public monies on the basis that, the parties being on opposite sides of party fences, this is a "political" question. Judicial consideration as to the transmission of information, as an ingredient for the making of governmental policy, in no way involves this court in the political process of policy formulation. The fact that the General Counsel and his subordinate and an assistant of the Senator each included some partisan contentions in the correspondence does not make the real issue in this case a political one. *Id.*

We hold that on the facts here presented, the claim alleged by the Plaintiff-Appellee presents a justiciable con-

troversy, and the Commonwealth Court did not err in so finding.

The statute we are called upon to interpret to answer the question in this appeal is Section 620 of the Administrative Code of 1929, 71 P.S. § 240, added September 27, 1978, P.L. 775, No. 149, § 3. That section reads

**Budget Implementation Data**

(a) The Governor shall make monthly expenditure data available to the Majority and Minority Chairmen of the Appropriations Committees of the Senate and the House of Representatives. Monthly data shall be provided within fifteen (15) days after the end of each month. The monthly data shall be prepared in such a way that the last monthly submission is a summary inclusive of the preceding months of the fiscal year and shall be usable to establish a history of expenditure file. This data, at the discretion of the Majority and Minority Chairmen of the Appropriations committees of the Senate and the House of Representatives may be provided either in finished reports or on computer tapes. The data shall be provided by fund, by appropriation, by department and by organization within each department and shall include:

(1) Number of filled personnel positions and their cost.

(2) Itemized personnel vacancies and their cost.

(3) New positions created and their cost.

(4) Wage and overtime costs.

(5) Allotments and expenditures for itemized personnel expenses.

(6) Allotments and expenditures for itemized operating expenses.

(7) Allotments and expenditures for itemized fixed assets.

(8) The rate of expenditures in appropriations for major subsidy and grant programs during the month.

*In addition to the above specified budgetary data, the Governor shall make available any other budgetary data as may be requested from time to time by the Majority and Minority Chairmen of the Appropria-*

*tions Committees of the Senate and the House of Representatives.*

(Emphasis added).

■ The Appellee rests his claim that he is entitled to the requested information on the emphasized language. The Appellants respond with several reasons why that language does not require them to act as requested. They first argue that the information sought by the Appellee is in fact already available in various reports and information routinely supplied for the use of the legislature and the general public. The Commonwealth Court's findings of fact that the information contained in these generalized reports is not necessarily complete, and that it cannot be retrieved without extensive computer searching and reprogramming, are based on substantial evidence and will not be disturbed. Such information cannot be said to be "available" in any meaningful sense. Nor can it be said to have been "made available" in response to a particular request. We find implicit in the structure of the statute—"The Governor shall make available any other budgetary data as may be requested from time to time"—a sense that that which is required of the Governor is in response to the request. That the information is in existence elsewhere in no way relieves the Governor of the duty imposed to affirmatively "make available" the particular information requested.

■ The Appellants' second argument is that the language of the statute speaks in terms of budgetary data requested "by the Majority *and* Minority Chairmen of the Appropriations Committees of the Senate *and* House of Representatives," 71 P.S. § 240(a) (emphasis added), requiring a response only if the request is made jointly and simultaneously by all four of those legislative officials. We find the opinion of the Commonwealth Court as to this contention to be well-reasoned and consistent with precedent.

To say that the legislature intended to provide that budgetary data could be obtained on a specific basis from the Governor only when committee chairmen from both

sides of the aisle in both houses of the legislature have made the request in a joint chorus is inherently implausible, particularly because the two houses of the legislature are not likely to need or want the same information simultaneously. Moreover, to require such a joint request would be to give each house, and each party group, an effective veto over any request by the other for information concerning how the tax money is being spent.

The presence of the word "and" between the references to the chairman and the references to the legislative houses does not, as a matter of law, mandate any such implausible interpretation.

As the Pennsylvania Supreme Court has stated in *Petrash Guardianship,* 425 Pa. 433, 437, 229 A.2d 878, 879–80 (1967), quoting *United States v. Fisk,* 70 U.S. [ (3 Wall) ] 445, 447 [18 L.Ed. 243] (1866):

"In the construction of statutes, it is the duty of the Court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe 'or' as meaning 'and' and again 'and' as meaning 'or.' "

75 Pa.Cmwlth. at 219, 462 A.2d at 317. *See also Pennsylvania Labor Relations Board v. Martha Company,* 359 Pa. 347, 352, 59 A.2d 166, 168–69 (1948); *Philadelphia National Bank v. Buchman,* 314 Pa. 343, 349, 171 A. 589, 591 (1934); *Rolland v. Commonwealth,* 82 Pa. 306 (1876).

■ Appellants' final argument is that certain of the information subject to the Order in question is not "budgetary data" because the departments addressed therein, although executive agencies, are not funded by revenue appropriated in the state budget. They request that the Order be limited to exclude such information. We note that although the Appellants generally excepted to the finding that the requested information was "budgetary data" and to the Order, there is no indication that they raised this particular point below. The Commonwealth Court has not, therefore, had an opportunity to address the issue of whether the information as to a *particular* agency is properly

218

within the scope of a Section 620(a) request. For purposes of this appeal, the issue must be considered waived. Pa.R. C.P. 1099; Pa.R.C.P. 1038(d).

For the foregoing reasons the Order of the Commonwealth is affirmed.