828 A.2d 1057

## CITADEL DEVELOPMENT COMPANY

v.

## BOARD OF ASSESSMENT APPEALS OF ERIE COUNTY and County of Erie

**Appeal of Citadel Development Company.**

Supreme Court of Pennsylvania.

Argued March 4, 2002.

Decided July 22, 2003.

John Joseph Shimek, Kevin W. Wargo, John Dunn, for Citadel Development Company, appellant.

Kenneth D. Chestek, for Erie County, appellee.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, and EAKIN, JJ.

## OPINION

Justice EAKIN.

Citadel Development Company, a real estate developer that built residential dwellings in a deteriorating area of Erie, challenges the property tax assessments for its dwellings. Citadel contends the appellees reduced applicable tax exemptions by applying a method not included in the Improvement of Deteriorating Real Property or Areas Tax Exemption Act (IDRPA), 72 P.S. § 4711–101, *et seq.*, and local ordinances.

Section 4711–302(a) of the IDRPA provides:

(a) Each local taxing authority may, by ordinance or resolution, exempt from all real property taxation the assessed valuation of any residential construction built in a deteriorating area from and after the effective date of this article in the amounts and in accordance with the schedule and limitations hereinafter provided.

72 P.S. § 4711–302(a).

Section 4711–303(a)(1),(b) of the IDRPA provides:

(a) A local taxing authority granting a tax exemption pursuant to the provisions of this article may provide for tax exemption on the assessment attributable to the actual cost of construction of the new dwelling unit in accordance with one of the following schedules:

(1) For the first, second and third year for which said newly-constructed dwelling unit or units would otherwise be taxable, one hundred per cent of the eligible assessment shall be exempted; after the third year the exemption shall terminate;

\* \* \*

(b) The exemption from taxes shall be limited to the assessment valuation attributable to the cost of construction of the new dwelling unit not in excess of the uniform maximum cost per dwelling unit specified by the municipal governing body. The exemption shall commence in the tax year immediately following the year in which the building permit

is issued. No tax exemption shall be granted under the provisions of this article for the construction of any dwelling unit in excess of the uniform maximum cost specified by the municipal governing body.

72 P.S. § 4711–303(a)(1),(b).

Erie County adopted Ordinance 59 implementing the exemptions allowed by IDRPA in 1980. Previously the City of Erie implemented the same in Ordinance 60–1478, November 15, 1978; the Erie School District did so by Resolution of July 17, 1979. The ordinances and resolution contain identical language. Ordinance 59 provides:

There is hereby exempted from all property taxation, the assessed valuation of improvements to deteriorated commercial and residential properties and the assessed valuation of new residential construction, in accordance with the provisions and limitations hereinafter provided.

Erie County Ordinance No. 59, 1980, § 2.

The maximum exemption permitted for new residential construction under Ordinance 59 is limited:

(a) 2. *New Residential Construction:* To that portion of the additional assessment attributed to the actual cost of construction, but not in excess of the maximum cost per dwelling unit as specified in sub-section (b) of this section.

\* \* \*

(b) The maximum cost per dwelling unit eligible for exemption shall be ... $15,936.00 per dwelling unit on the assessment attributable to the actual cost of improvements constructed during 1978 and ... $50,000.00 per dwelling unit on the assessment attributable to the actual cost of new construction constructed after the effective date of this Ordinance. Maximum cost for improvements constructed during each year thereafter shall be the maximum cost for the preceding year multiplied by the ratio of the United States Bureau of the Census new one-family houses price index for the current year to such index for the preceding year. The date of the construction shall be the date of issuance of the

building permit, improvement record or other required notification of construction. No tax exemption shall be granted under the provisions of this article for any improvements to any dwelling unit in excess of the maximum cost specified above. This limitation shall not apply to non-residential, industrial, commercial or other business properties which are eligible for exemption under this Ordinance.

Erie County Ordinance No. 59, 1980, § 3(a)(2),(b).

The schedule for real estate taxes to be exempted shall be as follows:

\* \* \*

2. *New Residential Construction:* For the first three (3) years during which the improvement becomes assessable, 100% of the eligible assessment shall be exempted.

Erie County Ordinance No. 59, 1980, § 4(a)(2).

When properties in Erie County are assessed, the common level ratio (CLR) is utilized; the CLR is the ratio of assessed value to current market value as determined by the State Tax Equalization Board (STEB). *See* 72 P.S. § 5342.1. It is a device by which a taxing authority equalizes assessments from different years to a base year, *i.e.*, the year of the most recent countywide reassessment. *See id.* Adjusting the cost of construction to base year dollars ensures assessments are applied equally to construction that happened years apart.

Citadel claims the taxing body here applied the CLR to the IDRPA exemption, reducing it in violation of the Ordinance; Citadel argues that use of the CLR to reduce the exemption ignored the language of the IDRPA and Ordinance 59, which explicitly state the exemption applies to 100% of the eligible assessment for the first three years in which the new construction would otherwise be taxable. *See* 72 P.S. § 4711–303(a)(1); Ordinance 59, § 4(a)(2).

The trial court held Citadel was correct, and the method used to calculate the exemption was contrary to Ordinance 59. In its Second Amended Findings of Fact, Conclusions of Law, and Order, the trial court stated:

Neither the enabling statute nor the ordinance permits use of the common level ratio in calculating the exemption. The common level ratio was established in 1982, after these ordinances were adopted, and none of the ordinances were amended to incorporate use of the common level ratio. Use of the common level ratio in calculating the exemption is contrary to the enabling statute and the ordinance.

Trial Court Second Amended Findings of Fact, 7/9/99, at 16–17. The trial court also held the IDRPA exemption applied to improvements only, not the underlying land. The trial court calculated the exemptions on these properties, and found the improvements were entirely exempt from real estate taxes in 1996 and 1997.

The County appealed to the Commonwealth Court, which vacated the trial court's ruling on the method of calculating the IDRPA exemption and remanded for recalculation using the CLR. The Commonwealth Court reasoned it was proper to apply the CLR because the assessed value would otherwise be zero unless construction exceeds $400,000, stating:

[T]he County's method of calculating the amount by applying the STEB ratio to the exempt cost of construction was the proper method. This alternative argument relies on the interpretation of Section 3(b) of the Ordinance.... The County states that it "has been uniformly adjusting the maximum exemption specified in the County's Ordinance by the common level ratio applicable to the year of exemption in order to approximate the maximums in 1996 dollars." ... The County attacks Citadel's method, which it contends allows homeowners to exempt far more than the amount of the exempt construction costs.

The specific issue here centers on whether the exemption amount should be subtracted from the fair market value (cost of construction) or from the assessed value. The following example illustrates the different arguments presented by the parties. Based on a current exemption of approximately $80,000, the County contends that the $80,000 applies to the cost of construction, while Citadel contends that amount applies to the assessed value.

If we assume a cost of construction of $200,000 and a common level ratio of 20%, the assessed value before the exemption is $40,000 ($200,000 X .20). By taking 20% of the current exemption amount, which would be $16,000 ($80,000 X .20) and subtracting that amount from the assessed value before exemption, we arrive at an assessed value of $24,000 ($40,000–$16, 000), which reduces the assessment by the amount of the assessment attributable to the exempt cost of construction. An alternate way of applying the method used by the County is to subtract $80,000, the exempt construction cost, from the total construction cost of $200,000, and then to apply the common level ratio to arrive at an assessed value of $24,000 ($200,000–$80,000 = $120,000 X .20 = $24,000). This is the method used by the County.

However, if we use the method that Citadel suggests, the assessed value after exemption would be zero in every case unless the construction costs exceeded $400,000 ($400,000 X .20 = $80,000). Section 3(b) of the Ordinance states that "[t]he maximum cost per dwelling unit eligible for exemption shall be ... $50,000 per dwelling unit on the assessment attributable to the actual cost of new construction...."

In referring to the maximum *cost* eligible for exemption, the ordinance exempts $50,000 of the *cost of construction*. It does not exempt $50,000 of the assessed value, as contended by Citadel. Furthermore, Citadel's suggested method does not give any weight to the language of Section 3(a)2 of the Ordinance limiting the exemption to that portion of the additional assessment attributable to the actual cost of construction, not in excess of the maximum cost eligible for exemptions. Moreover, "[i]t is well established that a statute exempting persons or property from taxation must be strictly construed against the taxpayer." *Hydrusko [v. County of Monroe]*, 699 A.2d [828,] 831 [(Pa.Cmwlth.1997), *appeal denied*, 550 Pa. 694, 704 A.2d 1383 (Pa.1997)]; 1 Pa.C.S. § 1928(b)(5). Therefore, we vacate the trial court's ruling on this issue and remand the matter for the proper calculation of Citadel's exemption amount.

*Board of Assessment Appeals of Erie County v. Citadel Development Company,* No. 2065 C.D. 1999, unpublished memorandum at 5–7, 751 A.2d 1272 (Pa.Cmwlth. filed April 3, 2000).

■ Neither the facts nor the applicable statutes are in dispute; this appeal focuses entirely on the proper calculation of the IDRPA tax exemption which rests on the interpretation and application of Ordinance 59 and the IDRPA. Accordingly, our review is plenary. *Thornburgh v. Lewis,* 504 Pa. 206, 470 A.2d 952, 953 (Pa.1983). Statutes which exempt property from taxation must be strictly construed against the party claiming the exemption. *See* 1 Pa.C.S. § 1928(b)(5); *Lehigh Valley Cooperative Farmers v. Commonwealth Bureau of Employment Security Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948, 950 (Pa.1982).

■ Section 4711–303(a) allows an exemption "on the assessment attributable to the actual cost of the construction." Section 4711–303(b) allows the taxing body to establish a ceiling on the cost of construction to which the exemption may be applied. Ordinance 59 § 3(b) originally set that ceiling at $50,000, but it is adjusted each year using a cost of living index; the maximum eligible cost rose to $76,861 for 1996, $78,297 for 1997, and $80,964 for 1998, the three years at issue. However, the ordinance used the phrase: "The maximum cost per dwelling unit eligible for exemption shall be . . . $50,000.00 per dwelling unit *on the assessment attributable to the actual cost* of new construction. . . ." Erie County Ordinance No. 59, 1980, § 3(b) (emphasis added). This seems to say the maximum *cost* eligible for exemption shall be $50,000 on the assessment attributable to the *cost,* which is at best circular and near tautological; the phrase resists clear understanding.

Given the wealth of applicable acronyms, clauses, and concepts, it is little wonder both sides advance an arguable position, but we must agree with the reasoning of the Commonwealth Court. The Ordinance states "the maximum cost . . . eligible for exemption shall be . . . . $50,000," as appellees

state. Citadel's contention is based on the second part of this phrase, which it contends means, "the maximum exemption shall be $50,000". This interpretation does not explain the words preceding the establishment of the maximum. The Ordinance does not say the maximum exemption shall be $50,000; it says the maximum *cost* eligible for exemption shall be $50,000. The words following the amount, which mirror the enabling language of § 4711–303(b), may muddy the issue, but they do not undermine this purposeful language. We also note subsequent language in the Ordinance: "No tax exemption shall be granted under the provisions of this article for any improvements to any dwelling unit in excess of the maximum cost specified above." Erie County Ordinance No. 59, 1980, § 3(b). This reaffirms the Ordinance's purpose of applying the ceiling to the cost of the improvement, not the assessment based on that cost.

Thus, IDRPA and Ordinance 59 exempt the assessment attributable to costs up to the stated ceiling; the assessment attributable to costs over that amount is not exempt. These enactments do nothing to affect how the assessments are calculated—indeed, that methodology will invariably change with time and circumstance. These enactments establish the calculation of the exempted portion of the assessment, i.e., what fraction or percentage of the assessment is exempt; calculation of that percentage or fraction stays the same no matter how the total assessment itself is determined. If the total cost is less than the ceiling in Ordinance 59 § 3(b), the entire additional assessment is attributable to it (the percentage is 100%), and is exempt. Where the total cost exceeds that ceiling, the portion of the total cost that the ceiling represents is exempt. It does not matter what method of assessment is used; it is the ratio of the ceiling to the total cost that is relevant and determinative.

For example, a $200,000 improvement would be assessed by the prevailing method; with a $50,000 ceiling under Ordinance 59 § 3(b), one fourth of the total assessment ($50,000 of the $200,000 on which the assessment is based) would be exempt. If the total cost were $100,000, half would be exempt; if the total cost were $250,000, one-fifth would be exempt, and so on.

The CLR does not affect this ratio; whether the CLR is applied before or after this determination, or whether the CLR is applied at all, the ratio will be the same.[1] CLR or no CLR, it is the ratio of the ceiling to the cost of new construction that is made relevant by the ordinance. The fraction that is exempt has as its numerator the ceiling, and the cost of improvement is the denominator. That fraction is established by the ordinance. The resulting exemption will be the same regardless of the CLR. That is, the CLR may reduce the final assessment, but it does not affect the portion of that assessment eligible for exemption.

Citadel claims the CLR was not in existence when the ordinance and statute were enacted, and cannot therefore be within the contemplation of those laws, which is true. However, the CLR is used to level a property's assessment, not reduce the amount of exemption. Its existence when the exempting laws were enacted is neither determinative nor germane to the present issue.

Therefore, the Commonwealth Court did not err in vacating the trial court's ruling regarding the method of calculating the IDRPA exemption and in remanding for the proper recalculation of Citadel's exemption using the CLR to calculate the exemption amount. Accordingly, we affirm the Commonwealth Court's order.

Order affirmed.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NEWMAN files a dissenting opinion in which Justice CASTILLE joins.

1. The logic of basic algebra, shows us that $(A \times B)-(A \times C) = A(B-C)$. In present terms, $(CLR \times cost)-(CLR \times ceiling) = CLR (cost-ceiling)$. The left half of this equation is the County's methodology for determining the non-exempt assessed value; the right half shows application of the CLR as in the Commonwealth Court's example. Whether the CLR is a factor before or after the subtraction, the result must be identical. If it were not to be used as a reducing decimal at all in this formula, as Citadel contends, then CLR = 1; the result is *still* the same.

Justice NEWMAN, dissenting.

This action involves interpretation of the Improvement of Deteriorating Real Property or Areas Tax Exemption Act (IDRPA), 72 P.S. §§ 4711–101 *et seq.*, and an ordinance enacted pursuant thereto. Because I disagree with the analysis and the ultimate result reached by the Majority, I respectfully dissent.

In 1971, the Pennsylvania Legislature, pursuant to Section 2(b)(iii) of Article 8 of Pennsylvania Constitution, enacted the IDRPA, authorizing local taxing authorities to provide "by ordinance or resolution" certain exemptions for improvements in deteriorated areas, 72 P.S. §§ 4711–301. Section 4711–302(a) states as follows:

> Each local taxing authority may, by ordinance or resolution, exempt from all real property taxation the assessed valuation of any residential construction built in a deteriorating area from and after the effective date of this article in the amounts and in accordance with the schedule and limitations hereinafter provided.

72 P.S. § 4711–302(a). Consistent with this language, Section 4711–303(a) allows an exemption "on the assessment attributable to the actual cost of the construction." 72 P.S. § 4711–303(a). Similarly, Section 4711–303(b) provides that "[t]he exemption from taxes shall be limited to the assessment valuation attributable to the cost of construction of the new dwelling unit not in excess of the uniform maximum cost per dwelling unit specified by the municipal governing body." 72 P.S. § 4711–302(b).

In 1980, the County Council of the County of Erie adopted Ordinance 59–1980 (Ordinance 59), implementing the IDRPA in Erie County.[1] After defining the boundaries of the relevant "deteriorated area" within the county, Ordinance 59 conveyed the directives of the IDRPA as follows:

1. Before 1980, the City of Erie implemented the IDRPA in Ordinance 60–1478, approved on November 15, 1978. Similarly, the Erie School District passed a resolution, implementing the IDRPA, on July 17, 1979.

*Exemption*

There is hereby exempted from all property taxation the assessed valuation of improvements to deteriorated commercial and residential properties and the assessed valuation of new residential construction, in accordance with the provisions and limitations as hereinafter provided.

Two years after the County of Erie passed Ordinance 59, the Commonwealth incorporated the Common Level Ratio (CLR) into the county assessment practice.[2] Application of the CLR in a property assessment calculation accounts for inflation and equalizes assessments of properties in relation to a base tax year, which is the year of the last countywide assessment.[3] As aptly related by the Majority, this scheme "ensures [that] assessments are applied equally to construction that happened years apart." Majority Opinion, p. 3.

In the early 1990s, Citadel Development Company (Citadel) purchased six parcels of land located in the "deteriorated area" on the Presque Isle Bay waterfront, where, some time thereafter, it built new, upscale, single-family residential dwellings.[4] Following the assessment of the property by the Erie County Board of Assessment (Assessment Board), Citadel objected to the method of the assessment on the ground that the Assessment Board incorrectly calculated the maximum exemption amount for improvements under the IDRPA and Ordinance 59. Specifically, Citadel argued that the Board of Assessment unjustifiably reduced the value of the exemption by the CLR. At issue presently is the following language of Ordinance 59, which correlated the limiting criteria of Section 4711–303 as follows:

2. Act of December 13, 1982, P.L. 1165, 72 P.S. § 5342.1. Prior to 1982, the State Tax Equalization Board used the CLR for valuation of school subsidies. 72 P.S. § 4645.16a.

3. For purposes of the present litigation the base tax year is 1969.

4. Until the mid–1980s, the Presque Isle Bay waterfront was inaccessible for development and consisted of a heavy industrial/commercial area with a railroad thoroughfare. Trial Court Opinion, p. 1; Brief for Appellee, p. 4. But, with the addition of the Erie Bayfront Highway and other infrastructure improvements in the mid–1990s, the nature of the area transformed to recreational, residential, and commercial uses. Trial Court Opinion, pp. 1–2; Brief for Appellee, p. 4.

*Maximum Exemption*

\* \* \*

The maximum cost per dwelling unit eligible for exemption shall be ... $50,000.00 per dwelling unit on the assessment attributable to the actual cost of new construction.... Maximum cost for improvements constructed during each year thereafter shall be the maximum cost for the preceding year multiplied by the ratio of the United States Bureau of the Census new one-family houses price index for the current year to such index for the preceding year.

The Assessment Board understood this language to mean that the $50,000.00 figure (adjusted for inflation by the inflation index ratio of the United States Bureau of the Census) [5] is the maximum cost of a new dwelling that is eligible for the exemption. Citadel maintains, however, that the limit set forth in Ordinance 59 is the **maximum assessed valuation** of the cost of construction that can be excluded from taxation. These varying interpretations translate into the following formulas for Citadel: Amount Subject to Taxation = (Actual Cost of the Property CLR)-($50,000.00 inflation index ratio) and the Board of Assessment: Amount Subject to Taxation = (Actual Cost of the Property CLR)-($50,000.00 inflation index ratio *CLR* ). It is plainly evident that because of the application of the CLR (as highlighted above), these two formulas produce varying results and, specifically, the method of the Assessment Board significantly increases the taxpayer's tax liability.[6]

5. For the three relevant years at issue, the limit set forth in Ordinance 59 increased to $76,861 for 1996, $78,297 for 1997, and $80,964 for 1998.

6. I note that not a single opinion written in this case at the trial or the appellate level sets forth both formulas advocated by the parties. For instance, while the Majority asserts that "[i]t does not matter what method of assessment is used," this statement is self-serving in that it is only true if one accepts the interpretation of the language of Ordinance 59 proposed by the Assessment Board. Majority Opinion, p. 7. Simple mathematics, however, illustrate that the formulas produce widely different results. The method advocated by the Assessment Board, for example, in the year 1996, for a property worth $350,000.00 with a CLR of 20% would generate $54,340.60 of property value subject to taxation. Conversely, given the same hypothetical numbers, Citadel's

Relying on the legal canon, which states that statutes exempting property from taxation should be interpreted narrowly against the party claiming the exemption, *see* 1 Pa.C.S. § 1928(b)(5), the Majority accepted the approach advocated by the Assessment Board, because: (1) it found the language of Ordinance 59 to be vague; and (2) Ordinance 59 did not explicitly set forth that $50,000.00 was the maximum exemption. The problem with this methodology, however, is that, irrespective of the characterization of the $50,000.00 figure, it utilizes the CLR in calculating the exemption.[7] This could not have been intended by the legislators who enacted the IDRPA or those who voted for Ordinance 59, because, at the time both were ratified, the CLR did not apply in the county assessment process. Consequently, the enabling legislation pertinent to this case is devoid of anything that could be interpreted to authorize application of the CLR in the calculation of the exclusion for purposes of the IDRPA.

The testimony of Mr. Joseph Cocco of the Assessment Board unequivocally supports this conclusion, as he admitted that there is nothing in either the IDRPA or Ordinance 59 that directs the Assessment Board to apply the CLR in calculating the exemption. *See* N.T., pp. 53–54; 63–64. It is also important to note that statutes similar to the IDRPA in nature (in that they authorize local taxing authorities to enact real estate tax exemptions) likewise make no reference to the CLR in provisions dealing with setting the maximum amount for the tax exemption. *See* Local Economic Revitalization Tax Assistance Act, 72 P.S. § 4725; New Home Construction Local Tax Abatement Act, 72 P.S. § 4754–4.

As Citadel points out, the IDRPA requires that local government implement the exemption it sets forth by "ordinance or resolution." 72 P.S. 4711–302(a)(stating "[e]ach local taxing

approach generates an exemption greater than the property value, which equates to no tax liability.

7. Indeed, the title of the subsection containing the language at issue is "Maximum Exemption." Therefore, I believe that, while the characterization of variables involved in the formula set forth in that subsection may differ, the result, unquestionably, must produce the maximum exemption allowed by Ordinance 59.

authority may, **by ordinance or resolution,** exempt from all real property taxation")(emphasis supplied). It follows from this statement that the calculation of the exemption must also be clearly set forth in the "ordinance or resolution" and any changes in that calculation must be adopted by "ordinance or resolution." Presently, despite the fact that the Legislature authorized the use of the CLR in the county assessment methodology in 1982, Erie County has not undertaken any steps to amend Ordinance 59 to explicitly incorporate the CLR in the valuation of the maximum exemption.

Yet, Erie County and the Assessment Board seek to integrate the CLR in this calculation, admittedly, without any authority to do so. While, as indicated previously, statutes exempting property from taxation are interpreted narrowly against the party claiming the exemption, I see no reason why Erie County and the Assessment Board should receive a windfall because they failed to do what was required of them, especially in circumstances such as these, where the enabling legislation could not have intended the interpretation they currently advocate.

By the late 1970s, the Presque Isle Bay waterfront was so economically devastated that, at that time, nobody anticipated a real estate developer, like Citadel, using the area to construct upscale, single-family homes.[8] Nonetheless, that is exactly what took place. Unquestionably, the tax-break attracted Citadel to develop the Presque Isle Bay waterfront and, hence, Erie County achieved far more than it ever hoped to accomplish by way of Ordinance 59. Presently, in limiting the tax benefit set forth in Ordinance 59, Erie County is seeking to exploit this success to increase its own tax revenue. It is patently clear, however, that the interpretation proposed by Erie County and the Assessment Board is reactionary to the way Citadel took advantage of Ordinance 59. This interpretation burdens the developer with a higher tax obligation

---

8. Given the economic decline of the Presque Isle Bay area at that time, in all likelihood, if Ordinance 59 stimulated even a semblance of economic growth in that locale, it would have been perceived as a considerable achievement.

and, hence, stifles economic growth in the "deteriorated areas," which is inconsistent with the original purpose of the IDRPA and Ordinance 59.

Accordingly, I would reverse the decision of the Commonwealth Court.[9]

Justice CASTILLE joins this dissenting opinion.

9. The Commonwealth Court is correct that, without applying the CLR to the calculation of the exemption, an assessed value of zero would result in every case, unless the construction costs exceed $400,000.00. However, this reasoning is not enough to overcome the fatal flaw of the argument made by the Assessment Board—there is nothing in the enabling legislation authorizing the use of the CLR in the calculation. Furthermore, I note that the exemption authorized by the IDRPA only lasts for three years and, thereafter, the properties become subject to taxation, just as other real estate.