# Hirth v. Estate of Warris

*Jeffrey G. Trauger,* for plaintiff.
*Robert A. Lechowicz,* for defendant.

WAITE, *J.,* December 22, 2005—This matter involves the appeal by appellant/defendant estate of Ronald Warris of our grant of summary judgment in favor of the appellee/plaintiff, Frederick A. Hirth. This opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

The matter involves the sale of real estate in which Hirth is the buyer and the estate of Warris is the seller. The property which is the subject of the agreement of sale suffered a severe fire loss. As a result, the closing on the property had to be postponed on two occasions due to the reluctance of the insurance carrier to remit insurance proceeds in connection with the fire loss. Under the agreement, Warris bore the risk of loss.

Purportedly without discussion or notice to anyone, the insurance carrier remitted a check for the full amount of the loss. The check was dated three days before the last proposed settlement date and was received one day after the last proposed settlement date. The payment made by the carrier was not only for the full amount of the loss but was for the full purchase price set in the agreement of sale for the entirety of the property—both land and building. Warris claims that the estate may cancel the deal and keep the insurance proceeds. Hirth contends that the deal should be completed with Hirth getting the property along with the insurance proceeds.

Simultaneous with Hirth's summary judgment motion, Warris filed a motion for judgment on the pleadings asserting not only that the facts were not in dispute, but that the issues were sufficiently clear to enable the court to dispose of the case on the pleadings.

Generally, in an appeal from a grant or denial of summary judgment, the appellate court's review is limited to determining whether the lower court committed an abuse of discretion or an error of law. The facts must be viewed in the light most favorable to the non-moving party. The scope of review of the appellate court of the determination of a motion for summary judgment is plenary, in that the standard of review is the same as that of the trial court. The reviewing court must determine, based on the record documents, whether there is an existence of a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. *Stanton v. Lackawanna Energy Ltd.,* 820 A.2d 1256, 1258-59 (Pa. Super. 2003).

The standards which govern summary judgment are well settled; when a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. *Fine v. Checcio,* 582 Pa. 253, 263, 870 A.2d 850, 857 (2005). A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the

existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt.

## DISCUSSION

Warris contends that there were material issues of facts involving the following issues:

(1) Whether Warris provided Hirth with information regarding the nature and extent of insurance coverage on the real estate which was subject to an agreement of sale between the parties.

(2) Whether Hirth made an election to either cancel the agreement or complete the sale of the property which was partially destroyed in a fire prior to the set settlement date.

(3) Whether the agreement expired on April 15, 2004.

(4) Whether Hirth had sufficient funds to complete settlement.

(5) Whether the court is constrained to find that a genuine issue of material fact exists due to the proffer of an affidavit of opinion on an issue.

(6) Generally, while set forth in separate paragraphs, whether Hirth satisfied all of the elements and requirements under the agreement to entitle him to relief.

We determined that it was undisputed that the parties utilized a standard Pennsylvania Association of Realtors form agreement of sale to enter a valid agreement for the sale of property described as 2275 Milford Square Pike, Quakertown, Pa. 18951; also described as tax parcel number 23-010-156. The purchase price was $108,000.

The agreement of sale form provided the following at paragraph 23:

"23. Maintenance And Risk Of Loss (1-02)

"(A) Seller will maintain the property, grounds, fixtures, and any personal property specifically scheduled herein in its present condition, normal wear and tear excepted.

"(B) In the event any system or appliance included in the sale of the property fails and seller does not repair or replace the item, seller will promptly notify buyer in writing of seller's choice to:

"(1) Repair or replace the failed system or appliance before settlement or credit buyer at settlement for the fair market value of the failed system or appliance (this option must be acceptable to the mortgage lender, if any). In each case, buyer accepts the property and agrees to the RELEASE set forth in paragraph 25 of this agreement, OR

"(2) Not repair or replace the failed system or appliance, and not credit buyer at settlement for the fair market value of the failed system or appliance. If seller does not repair, replace or offer credit for the failed system or appliance, *or if seller fails to notify buyer of seller's choice,* buyer will notify seller in writing within five days or before settlement, whichever is sooner, that buyer will:

"(a) Accept the property and agree to the RELEASE set forth in paragraph 25 of this agreement, OR

"(b) Terminate this agreement, in which case all deposit monies paid on account of purchase price will be returned promptly to buyer and this agreement will be VOID.

*"(C) Seller will bear risk of loss from fire or other casualties until time of settlement. In the event of damage by fire or other casualties to any property included in this sale that is not repaired or replaced prior to settlement, buyer will have the option of rescinding this agreement and promptly receiving all monies paid on account of purchase price or of accepting the property in its then condition together with the proceeds of any insurance recovery obtainable by seller. Buyer is hereby notified that buyer may insure buyer's equitable interest in this property as of the time of execution of this agreement."* (emphasis provided)

The above-recited paragraph of the agreement obligated Warris to insure the property against casualty, including fire damage, and in the event of fire, to grant Hirth the option of accepting the fire-damaged property with all "the proceeds of any insurance recovery obtainable by seller."

Originally, the sale was to settle by February 27, 2004. On January 30, 2004, a fire occurred and the house was heavily damaged to the point of effective total destruction. Warris notified the insurance carrier of the fire loss, and the ensuing investigation raised questions of possible arson as the cause. The carrier declined to make immediate payment until further investigations were conducted. As a result, the February 27 settlement date had to be set back. Two express extensions of the settlement date were executed; the last of which extended the settlement date to April 15, 2004. On April 12, 2004, the Allstate Insurance Company issued a check in the amount of $108,000. This was the precise full purchase price the parties agreed upon for the sale of the property. As of April 12, 2004, the addendum extending the settlement

was in full force and effect. Warris contends that he did not proffer the property along with the insurance proceeds to Hirth because he had not yet received the check from the insurer and did not know that payment was going to be made by the insurer. Warris asserts that the agreement expired by its terms on April 15, 2004, while the check was not received until April 16, 2004. Warris contends, therefore, that the agreement terminated by its own terms.

Warris does not consider it relevant that it was Warris who required the extensions to resolve the insurance issue. However, we believe that it is of critical importance to the disposition of this matter. Where, as here, seller sought the extension of time, seller cannot thereafter terminate the agreement without reasonable notice to the buyer. In *Schwoyer v. Fenstermacher,* 251 Pa. Super. 243, 380 A.2d 468 (1977), the seller brought an action to rescind an agreement to sell her farm on the theory that buyer had failed to perform within the time provided for in the agreement. In response, buyer brought an action for specific performance of the agreement. The opinion of the court contained the following comment:

"One provision of the agreement was that 'the said SELLER and PURCHASER hereby bind themselves, their heirs, executors, administrators, successors and assigns, for the faithful performance of the above agreement within 120 days from the date of this agreement, said time to be of the essence of this agreement, unless extended by mutual consent in writing endorsed hereon.'" *Id.* at 245.

The court found in the *Schwoyer* case that specific performance was properly ordered in that the failure to

settle earlier was not due to actions unilaterally taken by the buyer.

There is nothing of record and no assertion is made by Warris suggesting that Hirth gave notice of termination of the agreement. The parties may waive the time limits and there is nothing to suggest that either sought or expressed their intention or took any affirmative action to terminate the agreement, other than Warris' attorney's letter discussed below. *Cohn v. Weiss,* 356 Pa. 78, 51 A.2d 740 (1947). See also, *Phillips v. Tetzner,* 357 Pa. 43, 53 A.2d 129 (1947) (Where plaintiffs exercised option to purchase and so notified defendant within time named in option. Plaintiffs demanded a conveyance but defendant did not possess legal title at that time, the time limit mentioned in option was rendered inoperative by defendant's own action and plaintiffs were not bound thereby. Defendant was required to comply with his contract as soon as he acquired legal title.).

It has long been the law in our Commonwealth that it is competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed or a new one substituted, either by writings, words or conduct, or by all three. *Trustees of First Presbyterian Church of Pittsburgh v. Oliver-Tyrone Corp.,* 248 Pa. Super. 470, 476, 375 A.2d 193, 196 (1977). Notice to terminate a contract must be clear and unambiguous. *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 100, 644 A.2d 1251, 1254 (1994). "Ambiguous conduct and language intended to signal contract termination will be deemed not to have terminated the contract." *Id.* In *Accu-Weather,* our Superior Court held that the appellee did not properly terminate their contract because (1) notice was ambiguous in that

it failed to manifest a clear intent to terminate the agreement and (2) appellee's subsequent performance under the agreement negated the notice of termination. *Id.*

In ascertaining the intent of the parties to a contract when unclear from the writing itself, the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions. *Espenshade v. Espenshade,* 729 A.2d 1239, 1243 (Pa. Super. 1999). Thus, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view and the nature of the subject matter of the agreement. The court will adopt an interpretation that is most reasonable and probable, bearing in mind the objects which the parties intended to accomplish through the agreement. *Laudig v. Laudig,* 425 Pa. Super. 228, 233, 624 A.2d 651, 653 (1993). See also, *Melton, supra* (stating court may take into account attendant circumstances to determine parties' intent, when parties' intentions are unclear). "Before a court will interpret a provision in . . . a contract in such a way as to lead to an absurdity or make the . . . contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended." *Laudig, supra* at 232, 624 A.2d at 654.

Additionally, this "Commonwealth has accepted the principle in Restatement (Second) of Contracts §205 that '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *John B. Conomos Inc. v. Sun Company Inc. (R & M),* 831 A.2d 696, 705-706 (Pa. Super. 2003), *appeal denied,* 577 Pa. 697, 845 A.2d 818 (2004). "The duty of 'good faith' has been defined as '[h]onesty in fact in the

conduct or transaction concerned.'" *Somers v. Somers,* 418 Pa. Super. 131, 136, 613 A.2d 1211, 1213 (1992).

The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms and interference with or failure to cooperate in the other party's performance. *Id.*

A similar requirement has been developed in common law called the "doctrine of necessary implication," which states:

"In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Palmieri v. Partridge,* 853 A.2d 1076, 1079 (Pa. Super. 2004).

Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent. *Id.* In the absence of an express term, the doctrine of necessary implication may act to imply a requirement necessitated by reason and justice without which the intent of the parties is frustrated. *Somers, supra* at 137, 613 A.2d at 1214.

"The duty of good faith and the doctrine of necessary implication apply only in limited circumstances. Implied

duties cannot trump the express provisions in the contract." *Conomos, supra* at 706. "Both the implied covenant of good faith and the doctrine of necessary implication are principles for courts to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract." *Id.* at 707.

In the instant matter, Warris' attorney authored a letter to Hirth's attorney on April 12, 2004, advising that the insurance carrier would not transfer the policy of insurance to Hirth and stated as follows:

"The estate has done all it can to accommodate this sale, but I believe we are past the point of being able to close by April 15 under this agreement. I am not authorized to grant any further extensions. If your client wishes to make a new written offer on the property 'as is' the executor would be pleased to consider his offer."

Seller's attorney does not affirmatively state that an extension would not be negotiated but merely that he, as attorney for the executor of the estate, did not have the authority to grant an extension. Furthermore, there is no statement that they did not want the deal to be completed but merely re-affirmed what was already available to Hirth under the agreement as presently constituted; namely, to take the property "as is" together with such insurance proceeds as was available.

Where time is not made of the essence of the contract, either expressly or impliedly from the nature of the transaction or of the subject matter, and no material change has taken place in the circumstances of the parties, and time admits of compensation as is usually the case where the default consists in a mere failure to pay money on the day stipulated, relief will be decreed to the party seek-

ing it, and specific performance will be decreed in his favor if he has not been grossly negligent and comes within reasonable time, although he has not complied with the strict terms of the contract. *Cimina v. Bronich,* 517 Pa. 378, 537 A.2d 1355 (1988); *Detwiler v. Capone,* 357 Pa. 495, 55 A.2d 380 (1947).

On April 16, 2004, four days after the date of Warris' attorney's letter, it is admitted that a check from the insurance carrier dated April 12, 2004, arrived. We note that paragraph 23(B)2 provides buyer with five days after written notice of seller's decision to refuse credit for damages incurred to accept the property in its as-is condition together with such insurance proceeds as was available.

There was no response to the attorney's letter dated April 12 by Hirth before the check arrived. This description of the scenario regarding the remittance of the check and the date on which it was received without fore-notice and without any prior communication taken at face value does not amount to a clear and unambiguous termination of the contract. The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. *Murphy v. Duquesne University of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418 (2001). The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982). The whole instrument must be taken together in arriving at contractual intent. *Felte v. White,* 451 Pa. 137, 302 A.2d 347 (1973). Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. *Steuart,* 498 Pa. at 51, 444

A.2d at 662. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. *Felte,* 451 Pa. at 143, 302 A.2d at 351. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. *Hutchison v. Sunbeam Coal Corporation,* 513 Pa. 192, 519 A.2d 385 (1986).

Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We should not and have not distorted the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Thornburgh v. Lewis,* 504 Pa. 206, 470 A.2d 952 (1983). The interpretation given with respect to the settlement date as amended in the instant matter and as applied under contract law does not cause a termination, without more, under the facts and circumstances of this situation.

Interpretation of contracts is a question of law which can and should appropriately be made by the court. *Liddle v. Scholze,* 2001 Pa. Super. 67 (2001). In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished. *Halpin v. LaSalle University,* 432 Pa. Super. 476, 639 A.2d 37 (1994). Furthermore, the meaning of an unambiguous written instrument also presents a question of law for resolution by the court. *Community College v. Community College,*

*Society of the Faculty,* 473 Pa. 576, 592, 375 A.2d 1267 (1977).

Warris contends that his failure to provide information to Hirth regarding the nature and extent of the insurance coverage and/or proceeds is not relevant to Hirth's obligation to elect to take the property in its then as-is condition. As a general rule, the prevention or hindrance of another party's performance of a contract constitutes a material breach of the contract and excuses the non-performance of the non-breaching party. See *Apalucci v. Agora Syndicate Inc.,* 145 F.3d 630, 634 (3d Cir. 1998) (citing Pennsylvania law for "the general rule, [that] when one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure"); *Ott v. Buehler Lumber Company,* 373 Pa. Super. 515, 518, 541 A.2d 1143, 1145 (1988) (same); *Blake Construction Company Inc. v. C. J. Coakley Company Inc.,* 431 A.2d 569, 576 (D.C. 1981) ("It is well established that there are certain implicit duties between contracting parties, particularly the duty not to prevent performance by the other party"); *Williston on Contracts,* §§39:3, 39:12.

It is a contractual duty by implication to deal in good faith. The interpretation of the contract may include the interpretation of the reasonable means by which good faith is meant to be implemented. In our interpretation of this contract, we have implemented the duty as intended by the parties. This is a function entrusted to the courts to be exercised with all due discretion, keeping in mind the intentions of the parties. *Huang v. BP Amoco Corp.,* 271 F. 3d 560 (3d Cir. 2001).

The testimony of record fails to raise a genuine issue of material fact. The parties intended that Hirth would have the right to elect to take the damaged property along with insurance proceeds and that Warris failed to provide Hirth with information regarding the nature and extent of insurance coverage and the extent and amount of proceeds "obtainable" by the seller. *William M. Hendrickson Inc. v. Amtrak*, 2002 U.S. Dist. Lexis 4097, 39-40 (D. Pa., 2002). Neither Hirth nor Warris ever repudiated or terminated the agreement. Consequently, the agreement remained viable and in full force and effect. Hirth elected to take the damaged property with the insurance proceeds and Warris is obliged under the agreement to convey the property and insurance proceeds to Hirth.

Therefore, we entered our order granting Hirth's motion for summary judgment.