**[J-82-2016] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| WILLIAM PENN SCHOOL DISTRICT; PANTHER VALLEY SCHOOL DISTRICT; THE SCHOOL DISTRICT OF LANCASTER; GREATER JOHNSTOWN SCHOOL DISTRICT; WILKES-BARRE AREA SCHOOL DISTRICT; SHENANDOAH VALLEY SCHOOL DISTRICT; JAMELLA AND BRYANT MILLER, PARENTS OF K.M., A MINOR; SHEILA ARMSTRONG, PARENT OF S.A., MINOR; TYESHA STRICKLAND, PARENT OF E.T., MINOR; ANGEL MARTINEZ, PARENT OF A.M., MINOR; BARBARA NEMETH, PARENT OF C.M., MINOR; TRACEY HUGHES, PARENT OF P.M.H., MINOR; PENNSYLVANIA ASSOCIATION OF RURAL AND SMALL SCHOOLS; AND THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE-PENNSYLVANIA STATE CONFERENCE, <br><br> Appellants <br><br> v. <br><br> PENNSYLVANIA DEPARTMENT OF EDUCATION; JOSEPH B. SCARNATI III, IN HIS OFFICIAL CAPACITY AS PRESIDENT PRO-TEMPORE OF THE PENNSYLVANIA SENATE; MICHAEL C. TURZAI, IN HIS OFFICIAL CAPACITY AS THE SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES; TOM WOLF IN HIS OFFICIAL CAPACITY AS THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA; PENNSYLVANIA STATE BOARD OF | No. 46 MAP 2015 <br><br> Appeal from the Order of the Commonwealth Court entered on April 21, 2015 at No. 587 MD 2014. <br><br> ARGUED: September 13, 2016 |

EDUCATION; AND PEDRO A. RIVERA, : 
IN HIS OFFICIAL CAPACITY AS THE :
SECRETARY OF EDUCATION, :
                                    :
              Appellees :

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                            **DECIDED:  September 28, 2017**

        I join the majority opinion in concluding the matter before us is justiciable under the *Baker*[1] factor analysis.  I write separately to express my view that any time a party raises a colorable claim that a right guaranteed to the citizens of this Commonwealth by the Pennsylvania Constitution is being violated, such a claim always should be justiciable and analysis under the *Baker* factors is irrelevant because judicial restraint serves no purpose when constitutional rights are threatened or abridged.  *See* Hugo L. Black, *The Bill of Rights*, 35 N.Y.U. L. Rev. 865, 870 (1960) ("[T]he judiciary was made independent because it has…the primary responsibility and duty of giving force and effect to constitutional liberties and limitations upon the executive and legislative branches.").

        The political question doctrine implicates the prudential concerns of judicial restraint.  *Robinson Twp. v Commonwealth*, 83 A.3d 901, 917 (Pa. 2013) (questions of justiciability involve "prudential concerns implicating courts' self-imposed limitations").  *See also* L. Tribe, *American Constitutional Law* 79 (1978) ("Thus the political question doctrine, like other justiciability doctrines, at bottom reflects the mixture of constitutional interpretation and judicial discretion….").  The question of justiciability under the political question doctrine arises from a concern regarding the maintenance of the separation of

---

[1]  *Baker v. Carr*, 369 U.S. 186 (1962).

powers. *Consumer Party of Pa. v. Commonwealth*, 507 A.2d 323, 332 (Pa. 1986) *abrogated on other grounds by Pennsylvanians Against Gambling Expansion v. Commonwealth*, 877 A.2d 383 (Pa. 2005) ("To preserve the delicate balance critical to a proper functioning of a tripartite system of government, this Court has exercised restraint to avoid an intrusion upon the prerogatives of a sister branch of government."). A court should refrain from resolving a dispute where doing so would involve the judicial branch in carrying out the functions properly delegated to the legislative or executive branches. *Thornburgh v. Lewis*, 470 A.2d 952, 956 (Pa. 1983); *see also Consumer Party*, 507 A.2d at 333 ("it is appropriate to give due deference to a co-equal branch of government as long as it is functioning within constitutional constraints…"). Nevertheless, the resolution of disputes involving the interpretation of law is our constitutional duty. *Robinson Twp.*, 83 A.3d at 928 (courts must fulfill role of enforcing constitutional limitations); *Thornburgh*, 470 A.2d at 956 (it is the courts' constitutional duty to resolve disputes involving interpretation of the law). Further, it is the duty of the judicial branch to ensure that any constitutional right is not "impaired or destroyed by legislation." *Smyth v. Ames*, 169 U.S. 466, 527-28 (1898); *Zemprelli v. Daniels*, 436 A.2d 1165, 1169 (Pa. 1981) ("[I]t is the duty of the courts to invalidate legislative action repugnant to the constitution."). It would undermine our constitutionally mandated responsibilities to deliberately ignore a clear constitutional violation out of deference to a co-equal branch of government. *Consumer Party*, 507 A.2d at 333.

Appellants have challenged the current legislative framework for the financing and funding of the Commonwealth's public school system as constitutionally deficient on the basis that (1) the public school funding system does not meet the constitutionally mandated requirement to maintain a thorough and efficient system of public education as expressed in the Education Clause found in Article III, Section 14 of the

Pennsylvania Constitution,[2] and (2) the current funding system violates the right to equal protection guaranteed by Article III, Section 32 of the Pennsylvania Constitution (Equal Protection Clause).[3]

We have not been asked to decide whether, as a policy matter, a particular funding method is better than another. Rather, we have been asked to determine whether the existing funding method passes constitutional muster. These constitutional challenges do not involve garden variety political questions. They entail grave social, economic, and moral implications and consequences. A proper public education is not a static concept and must change with the evolving world around us. Likewise, the provision and maintenance of a "thorough and efficient" public education system must also evolve to ensure the Commonwealth's citizens are fully capable of competing socially, economically, scientifically, technologically and politically in today's society. *See, e.g.*, *Claremont Sch. Dist. v. Governor*, 635 A.2d 1375, 1381 (N.H. 1993) (education necessary to meet duty to cherish public schools must "be adapted to the various crises of human affairs"), *quoting McCulloch v. Maryland,* 17 U.S. 316, 415 (1819).

In my view, because the current challenge to the Commonwealth's public education financing system involves uniquely compelling issues which are not only of

---

[2] The Education Clause provides: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." PA. CONST. art. III, §14.

[3] In relevant part, Article III, Section 32 of the Pennsylvania Constitution prohibits the General Assembly from enacting special or local laws regulating the affairs of school districts that can be provided for by general law. PA. CONST. art. III, §32. Pennsylvania courts consider Article III, Section 32 and the Equal Protection Clause of the United States Constitution, U.S. CONST. amend. XIV, § 1, to be equivalent as both command that like persons in like circumstance be treated similarly. *Harrisburg Sch. Dist. v. Zogby*, 828 A.2d 1079, 1088 (Pa. 2003) (citations omitted).

constitutional import for Pennsylvania's students but also of paramount importance to the Commonwealth as a whole both now and in the future, this Court would be remiss in its own constitutional obligations by abstaining from deciding this constitutional challenge based on any theory of judicial restraint. *Consumer Party of Pa.*, 507 A.2d at 333 ("[W]hatever theory is employed, the legitimacy of the abstention is dependent upon the situation presented."). *See also* Martin Redish, *Judicial Review & the Political Question*, 79 Nw. U. L. Rev. 1031, 1059 (1985) (asserting political question doctrine is problematic because it allows federal government or one of its branches to breach constitutional boundaries without check of judicial review). Accordingly, I believe the justiciability of questions related to our government's compliance with its constitutional duties in this ever-evolving arena should not be subjected to mere mechanical application of certain enumerated factors. *See, e.g.,* William J. Brennan, *State Constitutions & the Protection of Individual Rights*, 90 Harv. L. Rev. 489, 490-92 (1977) ("state courts that rest their decisions wholly or even partly on state law need not apply federal principles of standing and justiciability that deny litigants access to the courts"); Helen Hershkoff, *State Courts and the "Passive Virtues": Rethinking the Judicial Function*, 114 Harv. L. Rev. 1833, 1940 (2001) ("[S]tate courts, because of their differing institutional and normative position, should not conform their rules of access to those that have developed under Article III [of the United States Constitution]. Instead, state systems should take an independent and pragmatic approach to judicial authority in order to facilitate and support their integral and vibrant role in state governance."). Consequently, appellants should have the opportunity to seek a merits disposition of their claims.