624 A.2d 651

**Robert E. LAUDIG, Jr., Appellee,**

v.

**Barbara J. LAUDIG, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1993.

Filed April 28, 1993.

230

Cynthia Ranck, Williamsport, for appellant.

Robin A. Read, Williamsport, for appellee.

Before WIEAND, OLSZEWSKI and HESTER, JJ.

WIEAND, Judge:

In this appeal we are asked to determine the validity of a post-nuptial agreement and whether it bars the wife from the right to additional marital assets under the Pennsylvania Divorce Code.[1] The trial court held that the agreement was valid and limited the right of wife to equitable distribution in the action granting husband a divorce. After careful review, we affirm.

Barbara Laudig (wife) and Robert Laudig (husband) were married in 1972. In 1987, after husband discovered that wife was involved in an extramarital relationship, the parties separated and wife moved out of the marital home. During the separation, husband contemplated divorcing wife and informed her of his intentions. However, on August 3, 1987, husband and wife reconciled and wife returned to the marital home. In conjunction with the reconciliation, husband requested wife to

1. 23 Pa.C.S. § 3101, et seq.

enter into a post-nuptial agreement which would limit her marital property rights in the event that she subsequently became involved in another extramarital affair.

Shortly after reconciliation, wife scheduled an appointment with her attorney in order to have the post-nuptial agreement drafted. In wife's presence, her attorney and husband negotiated the precise terms of wife's marital property rights in the event she would become unfaithful. The terms of the agreement provided, inter alia, that if wife engaged in sexual intercourse with anyone other than husband within a period of fifteen years, while the two were married and living together, wife would

> sign all of her right, title and interest in and to any marital property as defined by the laws of the Commonwealth of Pennsylvania to HUSBAND in consideration for the payment of the sum of Ten Thousand ($10,000.00) Dollars and the sum of One Thousand ($1,000.00) Dollars each and every year thereafter for the following fifteen years....

The agreement also provided that should marital misconduct other than infidelity occur, the "normal" divorce laws and settlement procedures would apply. The agreement was memorialized and subsequently sent to the parties for signature. Both parties signed the agreement on August 17, 1987.

Wife remained faithful until December 1988, at which time she renewed her relationship with her former paramour. Husband filed a divorce complaint on May 12, 1989 by which he sought a divorce on both fault and no-fault grounds. The complaint referred to the April 17, 1987 post-nuptial agreement and alleged that it was determinative of all matters pertaining to equitable distribution. Wife admitted entering into the agreement, but she denied that it resolved any issues regarding equitable distribution of the marital property.

On March 26, 1990, the trial court entered a decree which divorced the parties and retained jurisdiction over unresolved economic issues. A Master recommended that the validity of the post-nuptial agreement be upheld. He concluded that the wife's claim to the marital property was limited by the terms of the agreement. The trial court adopted the Master's

Report and Recommendation and dismissed wife's exceptions thereto. Wife appealed.

Our standard of review on appeal is a narrow one. We need determine only whether the trial court committed an error of law or an abuse of discretion. *Miller v. Miller*, 395 Pa.Super. 255, 259, 577 A.2d 205, 207, *alloc. denied*, 525 Pa. 664, 583 A.2d 794 (1990). We do not usurp the trial court's fact-finding function. *Id.; Zollars v. Zollars*, 397 Pa.Super. 204, 207–208, 579 A.2d 1328, 1330 (1990), *alloc. denied*, 527 Pa. 603, 589 A.2d 693 (1991); *Lyons v. Lyons*, 401 Pa.Super. 271, 276, 585 A.2d 42, 45 (1991).

Wife-appellant contends that the post-nuptial agreement does not operate to preclude her statutory rights in the event of a divorce; it merely provides for the transfer of certain property interests in the event infidelity occurs. She also argues that the agreement is unenforceable for its lack of consideration and its violation of public policy. We disagree.

The determination of marital property rights through prenuptial, post-nuptial and settlement agreements has long been permitted, and even encouraged. *Karkaria v. Karkaria*, 405 Pa.Super. 176, 183, 592 A.2d 64, 68 (1991). In *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990), the Supreme Court recognized that prenuptial agreements are contracts, and as such, are governed by contract law. Similarly, contract principles apply to antenuptial and post-nuptial agreements. *Adams v. Adams*, 414 Pa.Super. 634, 637, 607 A.2d 1116, 1118 (1992); *Nitkiewicz v. Nitkiewicz*, 369 Pa.Super. 504, 510 n. 2, 535 A.2d 664, 667 n. 2, *alloc. denied*, 520 Pa. 589, 551 A.2d 216 (1988); *Magee v. Magee*, 360 Pa.Super. 66, 68, 519 A.2d 994, 995 (1987). It has been held that "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *McMahon v. McMahon*, 417 Pa.Super. 592, 597, 612 A.2d 1360, 1363 (1992). See also: *Frank v. Frank*, 402 Pa.Super. 458, 587 A.2d 340 (1991).

The Pennsylvania Divorce Code also recognizes the validity of marital agreements. Section 3501 specifically provides that the definition of marital property does not include "property

excluded by valid agreement of the parties entered into before, during or after the marriage." 23 Pa.C.S. § 3501(a)(2). See also: *Karkaria v. Karkaria, supra* 405 Pa.Super. at 186, 592 A.2d at 69–70.

■ The paramount goal of contract interpretation is to "ascertain and give effect to the parties' intent." *Lyons v. Lyons, supra* 401 Pa.Super. at 277, 585 A.2d at 45. To accomplish this goal,

> "each and every part of [the contract] must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." In order to ascertain the intention of the parties, "the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

*Wrenfield Homeowners Ass'n, Inc. v. DeYoung,* 410 Pa.Super. 621, 627, 600 A.2d 960, 963 (1991) (quoted and cited cases omitted). See also: *Litwack v. Litwack,* 289 Pa.Super. 405, 408, 433 A.2d 514, 515 (1981).

The parties' intent, as expressed in their post-nuptial agreement in this case, is clear. Husband and wife contractually agreed to dispose of their marital property in a specified manner in the event of infidelity on wife's part. Although the contract language does not specifically address a divorce proceeding, the intent to preclude any other equitable distribution becomes clear when the contract is construed as a whole. Paragraph seven of the agreement specifically provides that should other marital misconduct occur, "the normal divorce laws and settlement procedures would apply, including the standards setting forth equitable division of marital property, alimony and the like."

■ Construing the contract as a whole, it is clear that the parties presumed wife's infidelity would lead to a divorce.

Recognizing this, the parties entered into the post-nuptial agreement to limit wife's right to participate in the distribution of marital property if the divorce followed wife's repeated infidelity. If the parties did not contemplate a divorce action in the event of such infidelity, the reference to divorce procedures in paragraph seven is meaningless. One portion of an agreement cannot be interpreted so as to annul another part. *Shehadi v. Northeastern National Bank of Pennsylvania*, 474 Pa. 232, 236, 378 A.2d 304, 306 (1977).

The record supports this construction as well. Husband testified that the purpose of the agreement was to limit the assets which wife would receive in the event she resumed her adulterous conduct. This intent comes through quite clearly. Paragraph seven indicates that the parties were cognizant of the fact that equitable distribution would occur in a divorce action, and, in the event of a divorce where there had been no infidelity by wife, normal distribution of marital property would be made.

█ Appellant argues that since the contract language does not specifically address property rights in the event of divorce, the provisions of the agreement do not apply. Under appellant's interpretation, the occurrence of infidelity would require wife to transfer all of her rights to the marital property to husband in exchange for a lump sum of money, and upon the subsequent filing of a divorce action, the property subject to the prior transfer would then be redistributed according to the Divorce Code. Such an interpretation flies in the face of basic contract law and undermines the validity of marital agreements. Not only is such a construction contrary to the intent of the parties, but the result is absurd.[2] "Before a court will interpret a provision in ... a contract in such a way as to lead to an absurdity or make the ... contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended." *Pocono Manor Ass'n v. Allen*, 337 Pa. 442, 446–447, 12 A.2d. 32, 35

2. Appellant concedes in her brief that such an interpretation would render an illogical result.

(1940). See also: *Berke v. Bregman*, 406 Pa. 142, 176 A.2d 644 (1962). We will not adopt this interpretation.

■ Appellant also contends that husband was physically and verbally abusive prior to her infidelity and that under the terms of paragraph seven, the normal divorce laws and settlement procedures should apply. Even if husband's conduct had been abusive, such misconduct alone would be insufficient to trigger the usual distribution of marital assets. His alleged misconduct was not litigated in the divorce action. The terms of the agreement unequivocally provided that if wife-appellant were unfaithful, she would transfer her rights to marital property to her husband in exchange for the consideration provided. Once husband learned of appellant's infidelity, he filed for divorce and sought to enforce the terms of the agreement. If husband committed marital misconduct prior to appellant's adultery, appellant was free to file for divorce on the grounds of such misconduct. This she did not do. Instead, she engaged in marital infidelity which invoked the provisions of her agreement.

■ Appellant also contends that the agreement is unenforceable for lack of consideration. Even if there is no consideration—such is not the case here—an agreement may not be avoided for lack of consideration if the agreement contains a provision expressing the parties' intent to be legally bound thereby under the Uniform Written Obligations Act of May 13, 1927, P.L. 985, 33 P.S. § 6. In *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975), the Supreme Court addressed this very issue. There, wife brought an action against husband to enforce the terms of a separation agreement which the parties had entered into in contemplation of a divorce. Husband argued that the agreement was unenforceable because it was not supported by consideration. The Supreme Court found the contract to be enforceable whether or not consideration existed. The Court stated:

> Assuming arguendo that no consideration passed to the appellant in return for his undertaking, the support clause nevertheless states that the [husband] intends to be legally bound by the agreement. Under the Uniform Written

Obligations Act, Act of May 13, 1927, P.L. 985, No. 475, § 1, 33 P. S. § 6, the absence of consideration does not render the agreement unenforceable where such statments [sic] are made part of the contract.

*Id.* 460 Pa. at 684, 334 A.2d at 587. See also: *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 534 A.2d 115 (1987), *appeal granted*, 518 Pa. 619, 541 A.2d 746 (1988), *affirmed*, 519 Pa. 439, 548 A.2d 1223 (1988); Wilder, Mahood & Greenblatt, *Pa. Family Law Practice & Procedure Handbook*, § 5–3 (2nd ed. 1991 Suppl.). The agreement in this case contains a clause which states that the parties intend to be legally bound thereby. Such an agreement is enforceable even without consideration under the Uniform Written Obligations Act.

■ Finally, appellant contends that the agreement is unenforceable because it violates public policy. We dispose of this argument based upon the reasoning set forth by the Master in his Report & Recommendation. One of the recognized purposes of marital agreements is to allow the parties to avoid the operation of equitable distribution. Marital agreements allow parties to dispose of their property rights regardless of the reasons behind the termination of their marriage. If such property rights can be transferred without providing any reason to support the transfer, there should be no reason why a transfer would be invalid if it be conditioned on the occurrence of a specified type of conduct. As the court recognized in *Lurie v. Lurie*, 246 Pa.Super. 307, 370 A.2d 739 (1976), even marital agreements which by their terms will become inoperative if the plaintiff fails to obtain a divorce by a certain date are valid.

Affirmed.