HARLACHER SIBUM, J.,
This matter comes before us on plaintiff’s first and second petition for special relief. Plaintiff filed her first petition for special relief on April 21, 2014 and her second petition for special relief on September 23, 2014. Since both petitions involve the same facts and issues, we will address them collectively. The relevant facts concerning this case can be summarized as follows.
Carmen and Ramon Echevarria were married on July 31, 1981 and divorced on August 25, 2006. On March 11, 2006, the parties entered into a post-nuptial agreement (hereinafter “2006 agreement”) outlining the rights and obligations incident to the divorce. The parties owned three properties which were distributed under the 2006 agreement: (1) the marital residence; (2) the business premises located at 606-610 Jackson Avenue, Bronx, New York; and (3) a building located at 1001 Findlay Avenue, Bronx, New York. With respect to the division of the foregoing, the 2006 agreement provides that plaintiff will relinquish her interest in the marital residence and the business premises “contingent upon” defendant’s cash payments of $37,500 and $25,000 subject to a payment scheme outlined in paragraph 16 of the 2006 agreement, which provides:
16. Cash Payments. Wife relinquishes her interest in the marital premises and other assets distributed to husband in consideration of a cash payment of $37,500.00 to be made within twenty-four (24) hours of unrestricted delivery of the deed.
(a) if husband sells house or refinances mortgage, payment is to be made immediately following closing.
*263 (b) if husband retains house [,] payment is to be made within two (2) years of date of execution of this agreement.
Wife relinquishes her interest in the business premises and other assets distributed to husband in consideration of a second cash payment of $25,000 to be made within twenty-four (24) hours of either:
(a) the husband’s sale, distribution, assignment, or transfer by any means of any significant part of the business known as Echevarria General Contracting Corp.;
(b) If husband retains the business premises, payment is to be made within five (5) years of the date of execution of this agreement. $15,000 is to be paid to Carmen Echevarria, in trust for Maria Valasquez; and $10,000 to be paid directly to Carmen Echevarria for a total of $25,000.
Plaintiff argues that defendant has not complied with the terms of the 2006 agreement. In her first petition for special relief, plaintiff alleges that defendant has failed to make timely payments of the $37,500 owed to her under the 2006 agreement. While plaintiff acknowledges that defendant has paid the principal sum in full over time, plaintiff contends that she is entitled to interest at the legal rate of 6% on the unpaid balance from date of execution of the 2006 agreement. Taking into account the payments defendant has made to her throughout the years, plaintiff argues that defendant owes her $16,002.50 in interest. In her second petition, plaintiff alleges that defendant has similarly failed to make timely payments towards the $25,000 owed to her under the 2006 agreement. Plaintiff alleges that the $25,000 became due on March 11, 2011 and that plaintiff has failed to pay the amount in full. As *264 such, plaintiff argues that she is entitled to the unpaid principal, interest, attorney fees and costs.
Defendant, on the other hand, argues that the 2006 agreement was later modified on September 18, 2013. According to defendant’s testimony, the parties went to a local notary public to finalize a letter agreement (“letter agreement”) modifying the terms of the original post-nuptial agreement. Defendant asserts that under the letter agreement, his obligations with respect to alimony, child support, legal fees, the 1999Buick Centuiy, and the property located at 242 Rhapsody Run, East Stroudsburg, PA were fully satisfied following defendant’s no-interest payment of $10,000 paid in 32 monthly installments beginning on October 1, 2013 to May 1, 2016. [Defendant’s Exhibit 1]. Additionally, the parties agree that defendant also provided a vehicle to plaintiff valued at $4000 for which defendant shall receive credit against his obligations under the agreement. ■
Upon review of all pleadings, evidence and testimony presented at the hearing, we are now prepared to decide the matter.
DISCUSSION
It is well-established that agreements between married parties are presumed to be valid. See In Re Ratoney’s Estate, 277 A.2d 791 (1971). “The determination of marital property rights through prenuptial, postnuptial and settlement agreements has long been permitted, and even encouraged.” Laudig v. Laudig, 425 Pa. Super. 228, 624 A.2d 651, 653 (1993). Postnuptial agreements are considered as contracts, and as such, are governed by contract law. Simeone v. Simeone, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990). Generally, the principles that govern antenuptial agreements are also applicable to postnuptial agreements. Lugg v. Lugg, 64 A.3d 1109 *265 (Pa. Super. 2013). Spouses should be bound by the terms of their agreement unless there is a finding of fraud, misrepresentation, or duress. See McMahon v. McMahon, 612 A.2d 1360, 1363 (1992). It is the intent of the parties that governs the interpretation of the agreement. Zlotziver v. Zlotziver, 49 A.2d 779 (1946). To accomplish this goal,
“each and every party of [the contract] must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument.” In order to ascertain the intention of the parties, “the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement.” The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.
Laudig v. Laudig, 624 A.2d 651, 653 (1993) (internal citations omitted).
Here, the intent of the parties expressed in the 2006 agreement is clear and unequivocal. In dividing their financial obligations and property rights, the parties intended that defendant would retain the parties’ marital premises, the business premises, and the building property located in Bronx, New York. In consideration for plaintiff’s relinquishment of her rights with respect to the marital and business properties, plaintiff is entitled to two payments of $37,500 and $25,000 respectively.
However, defendant argues that the 2006 agreement was later modified by the September 18,2013 letter agreement and that he has satisfied his obligations to plaintiff under the terms of that agreement. As such, we must determine whether the 2013 letter agreement modified the parties’ 2006 agreement.
*266 A contract can be modified with the assent of both contracting parties if the modification is supported by consideration. Wilcox v. Regester, 207 A.2d 817, 821 (1965). It is a well-settled principle of contract law that an agreement unsupported by consideration is nudum pactum and void. Under Pennsylvania law, however, a written agreement which provides that parties “intend to be legally bound” by its terms is enforceable even without consideration. 33 P.S. §6. The Uniform Written Obligations Act provides—
[a] written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.
33 P.S. §6. Thus, in Kay v. Kay, 334 A.2d 585 (1975), the court held that even though no consideration passed to the husband in exchange for his promise to pay his wife support payments pursuant to a separation agreement, the agreement was enforceable because it included a clause stating that husband intended to be legally bound by its terms.
After careful review of the letter agreement, we conclude that it is unenforceable for lack of consideration. The letter agreement modifies defendant’s payment obligations under the 2006 post-nuptial agreement by lowering the balance to $10,000. In addition, the letter agreement includes a payment scheme requiring defendant to pay in monthly installments of $312.50 for 32 months. It does not, however, contain a provision pertaining to any consideration passing to plaintiff in exchange for the modification. Defendant receives the benefit of a reduced obligation and a payment plan, while plaintiff does not receive anything in return. Plaintiff *267 testified that she received a phone call from defendant telling her to meet with him at the notary public’s office and once there, she was told to sign the documents. While the presence of counsel would have greatly benefitted plaintiff that afternoon, we nevertheless find that the letter agreement was unsupported by consideration and therefore unenforceable.
We further find that the letter agreement does not meet the requirements under the Uniform Written Obligations Act to rectify the lack of consideration. Prior to the parties’ signature, the letter agreement states “[i]f the above correctly expresses your understanding of the terms reached during our negotiations, please sign and date this letter of agreement.” While the Uniform Written Obligations Act does not require an exact phrasing, it does require words sufficient enough to show that the signatory did in fact intend to be legally bound. See Premium Management, Inc. v. Contakos, 55 Wes.C.L.J. 183 (1973). Here, the phrase “correctly expresses your understanding of the terms reached during our negotiations” does not sufficiently convey the parties’ intent to be legally bound by the agreement. Simply “understanding the terms” of the agreement does not mean that one agrees to be legally bound by it. Therefore, we find that the letter agreement does not comply with the requirements of the Uniform Written Obligations Act, thereby rendering the letter agreement void for lack of consideration. Thus, we conclude that the 2006 agreement remains unmodified and enforceable.
Having found that the 2006 agreement stands unmodified, we must now determine the amount owed by defendant. Under paragraph 16 of the 2006 agreement, defendant was to make two payments in consideration for plaintiff’s relinquishment of her interest in the marital and business properties. First, defendant must make a $37,500 *268 payment to plaintiff in exchange for plaintiff’s interest in the marital residence within “twenty-four (24) hours of unrestricted delivery of the deed.” That paragraph further provides that payment was due immediately if defendant sold the home or within two (2) years of the date of execution of the agreement if defendant retained the home. Upon review of these provisions, we find that defendant, having retained the marital residence, was obligated to pay the $37,500 on or before March 11, 2008, two years after the execution of the 2006 agreement.
Having determined the date by which defendant was required to pay plaintiff the $37,500, we must next determine what interest, if any, is due to plaintiff on account of untimely payment. Plaintiff testified that defendant paid the $37,500 in payments made over time. In plaintiff’s Exhibit 2, plaintiff appears to concede that she received $3 8,628.00 from defendant on or before April 4,2014. However, in reviewing the evidence of record, we find that plaintiff has failed to present sufficient evidence of the dates and amounts of the periodic payments made to her by defendant. As such, we are unable to calculate what interest would be due to plaintiff under the terms of the 2006 agreement with respect to the $37,500. Accordingly, plaintiff’s first petition for special relief will be denied.
Turning to plaintiff’s second petition for special relief, plaintiff alleges that defendant has failed to timely pay the $25,000 owed to her under the 2006 agreement. Under that agreement, defendant was required to make a $10,000 cash payment to plaintiff and a $15,000 payment in trust for plaintiff’s mother in consideration for plaintiff’s relinquishment of her rights with respect to the other business properties. Under paragraph 16, if defendant retains the business, the amount owed would be due five years from the date of the agreement. However, defendant’s company has since been dissolved and the *269 2006 agreement fails to address what happens upon the company’s dissolution. Thus, we find that the total payment of $25,000 was due on March 11,2011, five years after the date of execution of the 2006 agreement. To date, defendant has not made any payments toward the $15,000 in trust for plaintiff’s mother. We find that defendant is obligated to pay the principal amount of $15,000 to be held in trust for Maria Valasquez, and interest at the legal rate from March 11, 2011. Defendant, however, has made several payments totaling $8,823.98 towards the $10,000 amount due to plaintiff.[1] Defendant is thus obligated to pay the remaining balance of $1,176.02, plus interest at the legal rate from March 11, 2011.
Accordingly, we enter the following order.
ORDER
And now, this 26th day of January, 2015, upon consideration of plaintiff’s first and second petition for special relief, evidence and testimony presented in this matter, it is ordered as follows:
1. Plaintiff’s first petition for special relief is denied.
2. Plaintiff’s second petition for special relief is granted. Defendant is directed to pay $15,000 to plaintiff in trust for Maria Valasquez, plus interest at the legal rate of six percent (6%) from March 11,2011. Defendant is further directed to pay the remaining balance of $1,176.02 to plaintiff, plus interest at the legal rate from March 11, 2011, plus attorney fees in the amount of $500 and costs.
3. The letter agreement dated September 18, 2013 is declared void for lack of consideration.

. Defendant has made a $1,500 payment on 12/1/2013 and 11 payments of $302.18 thereafter. Defendant has also provided a $4000 vehicle to plaintiff, which is also being credited towards the $10,000 amount due. [Plaintiff’s Exh.2],