J-A20014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT O'CONNOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JANICE O'CONNOR | : | |
| | : | |
| Appellee | : | No. 1666 MDA 2016 |

Appeal from the Decree Entered September 12, 2016
In the Court of Common Pleas of Centre County
Civil Division at No(s):  2014-0011

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:          **FILED NOVEMBER 21, 2017**

Appellant, Robert O'Connor ("Husband"), appeals from the divorce decree entered in the Centre County Court of Common Pleas, specifically challenging the order granting the petition of Appellee, Janice O'Connor ("Wife"), to enforce a property settlement agreement.  We affirm.

The relevant facts and procedural history of this case are as follows. The parties were married on July 1, 1978.  The parties' primary marital residence was in Boalsburg, Pennsylvania.  Husband, however, has not resided full-time at the marital residence since 2001.  Since approximately 2009, Husband has lived at the parties' condominium in Arlington, Virginia. Husband works at the National Science Foundation ("NSF"), a federal agency in Washington, D.C.

On December 22, 2013, Husband informed Wife he wanted a divorce.

The following day, December 23, 2013, Husband provided Wife with a document labeled "Divorce Ideas/Proposal," which generally set forth Husband's suggestions and questions about alimony and dividing the parties' assets. Husband retained counsel and filed a divorce complaint on January 2, 2014. Wife subsequently retained counsel.

On April 15, 2014, the parties met without counsel and discussed a property settlement agreement ("PSA") Wife had drafted herself. The PSA stated Wife would, as alimony, receive sixty-six percent (66%) of Husband's income and sixty percent (60%) of Husband's consulting income. The PSA provided the parties would later specify whether Wife would receive a percentage of Husband's gross or net income. The PSA specified Wife would receive sixty-six percent (66%) of Husband's retirement income and required Husband to work until age 74. During the April 15th meeting, the parties executed the PSA. Husband did not consult with counsel before signing the agreement. Later on April 15, 2014, Husband sent Wife an e-mail asking her to reduce the percentage of income Husband owed Wife as alimony under the PSA.

On June 13, 2014, Wife filed a Petition to Enforce Property Settlement Agreement. Husband filed an answer on July 29, 2014. Husband asserted no new matter with affirmative defenses in response to Wife's petition. The court conducted hearings on Wife's petition on July 29, 2014, and on August 13, 2014, during which Husband and Wife testified.

On July 29, 2014, Wife testified she drafted the PSA based on Husband's "Divorce Ideas/Proposals" document. Wife stated the parties discussed economic settlement conditions from December 23, 2013, until April 15, 2014. Wife said when she met with Husband on April 15, 2014, she told him she had given to her counsel an envelope containing information disparaging to Husband. Wife noted if Husband caused anything to happen to her, she intended counsel to give the envelope to the police, Husband's girlfriend, and Husband's employer. Wife also stated she believed she was entitled to sixty-six percent (66%) of Husband's gross salary.

On August 13, 2014, Husband testified when he drafted the "Divorce Ideas/Proposals" document, he believed Pennsylvania had no alimony requirement and Wife would receive fifty percent (50%) of his retirement funds and income. Husband said he did not threaten Wife and there was no history of domestic violence incidents between the parties.

Husband explained Wife told him on April 15, 2014, she intended to use information she had found on a computer at the marital residence to blackmail Husband. Husband said Wife told him she had provided several blackmail documents to her attorney. Husband testified Wife claimed she had obtained an e-mail Husband wrote ridiculing a United States Senator, a leader of critics of the NSF. Husband added Wife said she found e-mails demonstrating Husband used his NSF e-mail address to participate in a NCAA men's basketball pool and send personal correspondence to his

girlfriend. Husband stated Wife also claimed she had obtained gay club entrance passes and a parking pass to a nude beach from the 1990's.

Husband testified Wife gave him 24 hours to review and sign the PSA. Husband added Wife told him not to discuss the PSA with counsel or the April 15th meeting. Husband explained he signed the PSA for several reasons: he feared Wife would make good on her threats to blackmail him if he did not sign the PSA; he hoped the language in the PSA was so vague the agreement would be unenforceable; and he believed the PSA terms were so unfair as to render the PSA unenforceable.

Husband testified he contacted his attorney about the PSA after he had signed the agreement. Husband stated his attorney later contacted Wife's attorney to rescind his signature on the PSA. Husband said he believed Wife was entitled to sixty-six percent (66%) of his net income under the PSA. Husband explained if Wife received sixty-six percent (66%) of his gross income, Husband would receive only $347 per month in income. Both parties testified they were aware on April 15, 2014, that the appraisal for the marital residence had not yet been completed.

On October 22, 2014, the trial court granted Wife's Petition to Enforce Property Settlement Agreement. Husband filed a motion for reconsideration and a petition to stay enforcement of the PSA pending appeal on November 20, 2014. On March 24, 2015, the court denied Husband's reconsideration motion and granted Husband's petition to stay enforcement of the PSA. On

October 16, 2015, Wife filed an answer and new matter to the divorce complaint.[1] The court entered a divorce decree on September 12, 2016. On October 5, 2016, Husband filed a timely notice of appeal and a voluntary concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).

Husband raises three issues for our review:

> WAS THE APRIL 15, 2014 TWO-PAGE DOCUMENT WITH SOME OF ITS TERMS HANDWRITTEN SO VAGUE THAT NO MEETING OF THE MINDS OCCURRED BETWEEN [HUSBAND] AND [WIFE], AND THUS NO ENFORCEABLE CONTRACT EXISTS BETWEEN THE PARTIES?
>
> WAS A FULL AND FAIR DISCLOSURE OF THE PARTIES' FINANCIAL POSITIONS EVER MADE, AS IS REQUIRED FOR ANTENUPTIAL AGREEMENTS IN PENNSYLVANIA?
>
> DID [HUSBAND] SIGN THE TWO-PAGE DOCUMENT UNDER DURESS, RENDING THE EXECUTED DOCUMENT UNENFORCEABLE?

(Husband's Brief at 4).

Our review of a marital settlement agreement implicates the following principles:

> A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise.

---

[1] We observe the trial court entered an order on November 9, 2015, allowing Husband to appeal from the October 22, 2014 order enforcing the PSA. On December 8, 2015, Husband filed a notice of appeal from the October 22, 2014. On February 5, 2016, this Court *sua sponte* quashed Husband's December 8, 2015 appeal as interlocutory, because the trial court had not yet entered a divorce decree and the November 9, 2015 order failed to comply with Pa.R.A.P. 341(c).

* * *

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

* * *

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.
>
> [***Stamerro v. Stamerro***, 889 A.2d 1251, 1257-58 (Pa.Super. 2005)].

***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa.Super. 2007) (some

internal citations and quotation marks omitted).

> [U]nder the law of contracts, the court must ascertain the intent of the parties when interpreting a contractual agreement. The standard of enforceability of a contractual agreement is also clear: absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements. As such, a trial court may interpret a property settlement agreement as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake. Moreover, the long-standing law of this Commonwealth is that property settlement agreements are presumed to be valid and binding upon the parties.
>
> When construing agreements involving clear and unambiguous terms, a trial court need only examine the writing itself to give effect to the parties' understanding. A

court may not modify the plain meaning of the words under the guise of interpretation. In addition, this Court must consider such contracts without reference to matters outside of the document, and we must ascertain the parties' intentions when entering into the contract from the entire instrument. Also, the parties are bound without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.

*Crispo v. Crispo*, 909 A.2d 308, 313 (Pa.Super. 2006) (internal citations and quotation marks omitted).

Generally, a contract is enforceable if its terms are "certain and explicit, not vague or indefinite." *Potter v. Leitenberger Mach. Co.*, 70 A.2d 390, 392 (Pa.Super. 1950). The language of a contract "should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Hart v. Arnold*, 884 A.2d 316, 333 (Pa.Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006). "When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Chen v. Chen*, 586 Pa. 297, 307, 893 A.2d 87, 93 (2006). "If left undefined, the words of a contract are to be given their ordinary meaning." *Kripp v. Kripp*, 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004). "In the absence of an ambiguity, the plain meaning of the agreement will be enforced." *Murphy v. Duquesne University Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 430 (2001). "The meaning of an unambiguous written instrument presents a question of law for resolution by the court."

*Id.*

"Before a court will interpret a provision in…a contract in such a way as to lead to an absurdity or make the…contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended." ***Pocono Manor Ass'n v. Allen***, 337 Pa. 442, 446-47, 12 A.2d 32, 35 (1940). An agreement is valid "if the parties intended to form a contract and there is a reasonably certain basis for giving an appropriate remedy." ***Jeannette Paper Co. v. Longview Fibre Co.***, 548 A.2d 319, 324 (Pa.Super. 1988), *appeal denied*, 522 Pa. 577, 559 A.2d 38 (1989). Furthermore, if the "vagueness as to some terms was not so overwhelming that it voided the basic understanding which was found to exist between the parties" the contract is valid. ***Id.*** at 325.

A postnuptial agreement requires a "full and fair disclosure of the parties' financial positions." ***Stoner v. Stoner***, 572 Pa. 665, 671, 819 A.2d 529, 532 (2003). The disclosure need not be precise, as long as it is "full and fair." ***Simeone v. Simeone***, 525 Pa. 392, 403, 581 A.2d 162, 167 (1990). Full and fair economic disclosure can be waived and such waiver is enforceable absent a showing of "fraud, misrepresentation, or duress." ***Lugg v. Lugg***, 64 A.3d 1109, 1113 (Pa.Super. 2013).

"Economic duress renders a contract voidable." ***Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.***, 364 A.2d 470, 473 (Pa.Super. 1976). "[T]he elements in the applicability of the doctrine of economic duress or business

compulsion are that (1) there exists such pressure of circumstances which compels the injured party to involuntarily or against his will execute an agreement which results in economic loss, and (2) the injured party does not have an immediate legal remedy." ***Id.*** at 474. (citations omitted). "[T]here can be no duress where the contracting party is free to come and go and to consult with counsel before assuming…contractual obligations," even if the contracting party was surprised by negotiations and pressured into accepting contractual obligations. ***Degenhardt v. Dillon Co.,*** 543 Pa. 146, 155 n.4, 669 A.2d 946, 951 n.4 (1996). ***See also Simeone, supra***, at 404, 581 A.2d at 167 (holding no duress existed when plaintiff was able to consult with legal counsel); ***Adams v. Adams***, 848 A.2d 991, 994 (Pa.Super. 2004) (holding divorce settlement agreement was valid, because no duress existed when wife had opportunity to consult with counsel even though wife experienced stress and anxiety during divorce process).

Pennsylvania Rule of Civil Procedure 1030 provides as follows:

**Rule 1030. New Matter**

(a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, *res judicata*, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter". A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

(b)  The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded.

Pa.R.C.P. 1030.  Rule 1032 reads in part:

**Rule 1032.   Waiver of Defenses.   Exceptions. Suggestion of Lack of Subject Matter Jurisdiction or Failure to Join Indispensable Party**

(a)   A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim and any other nonwaivable defense or objection.

Pa.R.C.P. 1032(a).  Importantly, the list of affirmative defenses contained in Pa.R.C.P. 1030(a) is not exclusive.  ***Falcione v. Cornell School District***, 557 A.2d 425, 428 (Pa.Super. 1989).   "An affirmative defense is distinguished from a denial of facts which make up a plaintiff's cause of action in that a[n affirmative] defense will require the averment of facts extrinsic to the plaintiff's claim for relief."  ***Id.*** at 428-29.  "Failure to plead an affirmative defense in compliance with [Pa.R.C.P.] 1030 results in waiver of the defense."  ***Werner v. Werner***, 573 A.2d 1119, 1121 (Pa.Super. 1990), *appeal denied*, 527 Pa. 668, 593 A.2d 843 (1991); Pa.R.C.P. 1032(a).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Pamela A.

Ruest, we conclude Husband's issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (*See* Rule 1925(a) Opinion, filed October 17, 2016, at 1 unpaginated; Trial Court Opinion, filed October 22, 2014, at 2-5) (finding: **(1)** parties negotiated settlement of their marital estate from December 2013, when Husband informed Wife he wanted to divorce, until April 2014; parties intended PSA to settle their marital estate amicably; PSA specifies allocation of real estate, alimony, retirement money, joint financial accounts, vehicles, jewelry, family antiques, and inherited possessions; under circumstances, parties' intent was clear; **(2)** Husband waived full economic disclosure, because he knew when he entered into PSA that appraisal of marital residence was not complete; court will not question reasonableness of Husband's negotiation of agreement; **(3)** Wife's purported actions do not amount to economic duress; Husband testified Wife offered him 24 hours to consult with counsel before signing agreement; Wife's alleged conduct also does not constitute traditional duress, because Husband alleged no threat of physical harm; further, purported threats Wife made to Husband were not impending; rather, Wife provided Husband 24 hours to discuss PSA with his attorney; further, Husband signed PSA on same day; therefore, Husband was not under "duress" to sign agreement). The record supports the trial court's rationale.

With respect to Husband's specific complaints about the PSA, Husband

failed to raise any affirmative defenses to Wife's petition to enforce the PSA, such as ambiguity, lack of full and fair disclosure, and duress. These claims are affirmative defenses, which required Husband to aver facts extrinsic to Wife's petition in order to prevent enforcement of the PSA. ***See Falcione, supra***. Husband averred in his answer to Wife's petition that the PSA was ambiguous but did not explain what terms of the PSA were vague. ***See id.*** Because Husband failed to raise his affirmative defenses in response to Wife's petition to enforce the PSA, the defenses are waived. ***See Werner, supra***. Accordingly, we affirm on the basis of the trial court's opinions.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2017

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION- LAW

ROBERT O'CONNOR,
    Plaintiff

v.

            No. 2014-0011

JANICE O'CONNOR,
    Defendant

*Attorney for Plaintiff:*         *Laura Robbins, Esq.*
*Attorney for Defendant:*        *Rosadele Kauffman, Esq.*

### Opinion in Response to Matters Complained of on Appeal

**Ruest, J.**

Robert O'Connor ("Plaintiff") filed a Notice of Appeal contemporaneously with a Statement of Matters Complained of Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) on October 5, 2016. Plaintiff appeals from this Court's Opinion and Order entered on October 22, 2014, granting a Petition to Enforce Property Settlement Agreement. The Court believes the matters Plaintiff complains of on appeal have been adequately addressed in this Court's Opinion and Order entered on October 22, 2014. The Court relies on that opinion and order and respectfully submits that no further opinion is necessary at this time.

BY THE COURT:

_____
Pamela A. Ruest, Judge

Date: _October 17, 2016_

☐O ☐RD ☒S

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION

ROBERT O'CONNOR,
    Plaintiff

v.

JANICE O'CONNOR,
    Defendant

No. 2014-0011

*Attorney for Plaintiff:*                            *Laura Robbins, Esq.*
*Attorney for Defendant:*                      *Rosadele Kauffman, Esq.*

## OPINION AND ORDER

**Ruest, J.**

Presently before the Court is a Petition to Enforce Property Settlement Agreement filed by Defendant Janice O'Connor on June 13, 2014. The Court held hearings on this matter on July 29, 2014 and August 13, 2014. The parties thereafter timely filed briefs on September 12, 2014. Upon consideration of the record, the briefs, and the arguments of counsel, the Court is now ready to render its decision.

## Background

Plaintiff Robert O'Connor ("Husband") and Defendant Janice O'Connor ("Wife") were married on July 1, 1978. On December 22, 2013, Husband told Wife he wanted a divorce. On the following day, he presented her with a document titled "Divorce Ideas/Proposal." On April 15, 2014, the parties signed an agreement prepared by Wife and interlineated by the parties. On April 23, 2014, Husband's attorney sent Wife's attorney a letter indicating that she had reviewed the signed agreement and that the letter was to be considered a written revocation of Husband's signature as he had signed it under duress and did not agree to its terms.

☐O ☐RD ☒S

Wife filed a Petition to Enforce Property Settlement Agreement on June 13, 2014. Husband filed an Answer on July 29, 2014. Hearings were held on this matter on July 29, 2014 and August 13, 2014.

## Discussion

Wife seeks to enforce the Agreement the parties signed on April 15, 2014. Husband alleges that it is unenforceable because he signed it under duress, it is too vague to be enforceable, and there was no full and fair disclosure of the marital estate. The Court will address each of Husband's arguments in turn.

### I. Duress

Husband first argues that the Court should not enforce the Agreement, which both parties agree should be treated as a contract, because he signed it under duress. According to Husband's testimony, Wife presented him with an Agreement and threatened she had downloaded his hard disc and was using information found on the hard disc to blackmail him. He testified that she told him she would give him 24 hours to sign or she would send a copy of a 2009 email from Husband criticizing a U.S. Senator to the Senator; inform his employer, the National Science Foundation, that he had used his work email to place an illegal bet on an NCAA pool; and send his girlfriend and her adult children copies of passes to a gay club he had attended in the 1990s. Husband stated that Wife told him he had 24 hours to sign before she acted on her threats, and he could think about it on his drive from State College, Pennsylvania to Arlington, Virginia. Husband signed the Agreement before he left State College on April 15. He stated that he did so because he thought her threats regarding his reputation to his employer and girlfriend were credible and the Agreement was too vague and unfair to be enforceable.

"[A]bsent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements." *Lugg v. Lugg*, 2013 PA Super 67, 64 A.3d 1109, 1112. Accordingly, contracts made under duress—either traditional duress or economic duress—may be avoided

2

under certain circumstances. Husband cites to case law regarding the economic duress doctrine, while Wife cites to case law involving traditional duress. The Court will therefore consider both defenses to enforcing the Agreement.

"[T]he elements in the applicability of the doctrine of economic duress or business compulsion are that (1) there exists such pressure of circumstances which compels the injured party to involuntarily or against his will execute an agreement which results in economic loss, and (2) the injured party does not have an Immediate legal remedy." *Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.*, 243 Pa. Super. 101, 364 A.2d 470, 474 (1976) (citations omitted). Traditional duress is "[t]hat degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Lugg v. Lugg*, 64 A.3d at 1113 (citing *Adams v. Adams*, 414 Pa.Super. 634, 607 A.2d 1116, 1119 (1992)). "Moreover, in the absence of threats of actual harm there can be no duress where the contracting party is free to consult with counsel." *Id.* In the instant matter, Wife's actions as presented by Husband do not amount to economic duress or duress because by Husband's own testimony Wife offered him 24 hours to consult with counsel before signing the Agreement. Husband cannot satisfy the second element of economic duress because Wife provided him an opportunity to seek legal remedies. Similarly, because Husband does not allege that Wife threatened him with physical harm, the elements of traditional duress are not met because Wife specifically offered him 24 hours to discuss the Agreement with his attorney. In fact, less than 24 hours after signing the Agreement, Husband emailed Wife to further discuss it. Husband emailed Wife that same day at 11:58 p.m. asking if alimony could be reduced if she got remarried or cohabitated and if she would consider reducing her share of the consulting income from 60% to 50% or even 25%. There was therefore no duress.

## II. Vagueness

Husband argues the Court should not enforce the Agreement because the Agreement is too vague for a court to ascertain the parties' intent to a reasonable degree of certainty. In

3

support of his argument, Husband reviews the facts of one employment law case from 1922 where the Supreme Court of Pennsylvania refused to enforce an employment contract "for life" between an employer and an employee. *See Edgcomb v. Clough*, 275 Pa. 90, 118 A.2d 610 (1922). The Court finds it telling that Husband did not cite to any case in Pennsylvania where a court refused to enforce a post-nuptial agreement because it was too vague.

The Court's goal in interpreting a post-nuptial agreement is to "ascertain and give effect to the parties' intent." *Laudig v. Laudig*, 425 Pa. Super. 228, 233, 624 A.2d 651, 653 (1993). To do so, the court "may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." *Id.* (internal citations omitted). "The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement." *Id.* In this case, the parties negotiated from December 2013, when Husband informed Wife of his intention to seek a divorce, until April 2014 regarding settling their marital estate. In December 2013, Husband drafted a document titled "Divorce Ideas/Proposal" specifying that "[t]he more we can agree on things, the happier we will be and the less we will pay to lawyers." It is clear that the parties' intent in signing the April 15, 2014 agreement was to settle their marital estate amicably. The agreement specifies allocations of real estate, alimony, retirement money, joint financial accounts, vehicles, jewelry, family antiques, and inherited possessions. The Court cannot find based on these circumstances that the intent of the parties was vague.

## III. Full and Fair Disclosure

Husband argues that the Court should not enforce the Agreement because Wife did not make a full and fair disclosure of the marital estate to Husband and the Agreement does not provide Husband with reasonable provisions. In 2003, the Supreme Court of Pennsylvania explained that "the postnuptial agreement should be evaluated as any other contract. All that is required is full and fair disclosure of the parties' financial positions; inquiry into the

4

reasonableness of the bargain or the parties' understanding is improper." **Stoner v. Stoner**, 572 Pa. 665, 819 A.2d 529, 532 (2003). "[F]ull economic disclosure is waiveable in a post-nuptial agreement." **Lugg v. Lugg**, 64 A.3d at 1113. In this case, Husband alleges that Wife did not provide him with a full and fair disclosure of the value of the Boalsburg, Pennsylvania, property because the appraisal was not complete at the time the parties' executed the Agreement on April 15, 2014. The Court finds that Husband waived full economic disclosure because he knew at the time he entered the Agreement that the appraisal was not complete. The Court will not inquire into the reasonableness of the bargain on behalf of Husband pursuant to **Stoner v. Stoner**, 572 Pa. 665, 819 A.2d 529, 532 (2003).

Accordingly, the following Order is entered:

## ORDER

AND NOW, this 22nd day of October, 2014, the Petition to Enforce Property Settlement Agreement filed by Defendant Janice O'Connor on June 13, 2014 is **GRANTED**.

BY THE COURT:

_____
Pamela A. Ruest, Judge

5