J-S32004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CYNTHIA STAIMAN VOSK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARNO VOSK | : | No. 80 MDA 2025 |

Appeal from the Decree Entered December 19, 2024
In the Court of Common Pleas of Lycoming County Civil Division at
No(s):  FC-2022-20425-DI

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: OCTOBER 7, 2025**

Cynthia Staiman Vosk (Wife) appeals from the final divorce decree entered in the Court of Common Pleas of Lycoming County.  On appeal, Wife contends that the trial court erred in interpreting a provision in the parties' prenuptial agreement.  After careful review, we affirm.

Wife and Arno Vosk (Husband) were married on February 17, 2008.  On February 15, 2008, the parties executed a prenuptial agreement (Agreement) that contained, in relevant part, the following provisions:

> The parties agree that in the event they separate, and [Husband's] financial net worth exceeds [Wife's] financial net worth, [Husband] shall pay alimony to [Wife] for a minimum of one (1) year with an additional year being added for every three years the parties are married after the third year.  [Husband] shall pay to [Wife] said alimony in the sum of $500.00 per month.

---

[*] Former Justice specially assigned to the Superior Court.

* * *

It is the intention of [Husband] and [Wife] to reside at the home owned by [Husband and located at] 463 Pleasant Hill Lane, Williamsport, Pennsylvania 17702 [(Property)]. The parties agree that in the event they would divorce and [Husband] still holds title to the [Property], [Wife] is entitled to a lump sum cash payment from [Husband] equal to five percent (5%) of the net market value (value less indebtedness) of the [Property]. For each full year after the marriage and as long as the parties reside together for that whole year, [Wife] is entitled to an increase in the lump sum cash payment due her by one percent (1%) each year they remain married and living together. However, [Wife's] cash payment shall never exceed twenty-five (25%) percent of the net market value of the [Property]. . . . The net market value of the home shall be determined by a mutually agreed upon appraiser.

* * *

The parties agree that both shall contribute to their joint living expenses[,] including the expenses associated with the [Property,] in accordance with their financial resources. Further, the parties agree not to borrow against or encumber the [Property] unless mutually agreed[-]upon.

Agreement, 2/15/08, at 5-7.

The parties attached "Schedule A" and "Schedule B" (collectively, Schedules) to the Agreement. The Schedules list the "nature and extent of all assets in which each party has an interest and their approximate values [and] provide [the parties] with a clear understanding of **their separate assets and net worth**, and potential income and net worth [and] . . . represent a full and complete disclosure of the[ parties'] respective property, income, and obligations." *Id.* at 4, 11 (emphasis added). Husband's separate property, attached to the Agreement in "Schedule A," includes two investment accounts, two IRAs, his pension plan, the Property, two vehicles, two tractors,

farm and lawn equipment, photo equipment, and designated house contents (antique furniture, books, artwork). *Id.* at 10 ("Schedule A [is] a list of **all of the assets of** [**Husband**] with their values.") (emphasis added).[1]

The parties stipulated that Wife vacated the Property, which was Husband's premarital property, on June 8, 2022. Wife filed for divorce five days later, on June 13, 2022.

On March 6, 2024, Wife filed a "Petition to Interpret Agreement/Petition to Determine Date of Separation,"[2] seeking, in part, a determination of "the date of separation and also [] the parties' net worth pursuant to the terms of the [Agreement]." Petition to Interpret Agreement/Determine Date of Separation, 3/6/24, at ¶ 18. On May 1, 2024, the court entered an order stating that the parties had mutually agreed "to reduce all argument [on Wife's petition] to legal argument only with respect to the parties' respective financial net worth for the purpose of the [c]ourt making a determination as to whether [H]usband owes Wife alimony." Order, 5/1/24, at 1.

After receiving briefing on the issue from the parties, the court entered an order determining that the Agreement's term "financial net worth" only

---

[1] Conversely, under the Agreement, anything titled in both parties' names is considered "Joint Property" and shall be equally divided between the parties. *Id.* at 5, 7. Only the parties' joint assets are subject to equitable distribution. *Id.* at 7. *See id.* ("The only assets that shall be subject to equitable distribution shall be those assets which are deemed to be joint property of the parties as defined in this [A]greement.").

[2] The parties ultimately came to a mutual agreement on their date of separation as June/July 2022. Thus, it is not an issue on appeal.

includes the values of the parties' financial accounts and excludes Husband's Property and pension. *See* Order, 9/13/24. Based on the court's interpretation, Wife's financial net worth exceeded Husband's; thus, Wife was not entitled to alimony under the Agreement.

On December 19, 2024, the trial court entered a final divorce decree in the instant matter.[3] Wife filed a timely notice of appeal[4] from the divorce decree and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Wife presents the following issues for our consideration:

(1) Whether the [t]rial [c]ourt erred in determining the definition of "financial net worth" and in its inference that it means the same as "financial resources" as used in the [A]greement[?]

(2) Whether the [t]rial [c]ourt erred when it failed to include the value of Husband's real estate assigned to each party in their respective "financial net worth" calculations[?]

(3) Whether the [t]rial [c]ourt erred when it failed to include the value of Husband's pension as part of his "financial net worth" and when it did not provide any basis for that conclusion[?]

(4) Whether the [t]rial [c]ourt erred in making unsupported inferences regarding the intent of the parties and not requiring a hearing for parol evidence when it could not find

_____

[3] At the time of the entry of the divorce decree, Husband still held title to the Property.

[4] Wife originally filed an appeal from the court's September 6, 2024 order interpreting the term "financial net worth." However, our Court quashed that appeal, filed at 1455 MDA 2024, as interlocutory. *See* Order, 12/13/24. *See also* Pa.R.A.P. 341(b)(1) (final order is order that disposes of all claims and all parties).

- 4 -

an ordinary meaning [for] the term "financial net worth"
within the four corners of the [A]greement itself[?]

Wife's Brief, at 5-6.

Wife contends that the trial court erred in not interpreting the Agreement's term "financial net worth" according to its plain meaning—"the sum of all of the parties' assets less the debts"—which would include Husband's real estate holdings and pension. Wife's Brief, at 8. Wife also argues that the court erred when it concluded that the Agreement's terms "financial net worth" and "financial resources" were synonymous and interchangeable. *Id.* at 9. Finally, Wife complains that the court failed to provide a basis for its conclusion that Husband's pension is income, and not an asset, and, thus should not be included in the determination of his "financial net worth." *Id.*

Our standard of review for appeals involving the financial terms of an agreement in a divorce action is a narrow one. "We need determine only whether the trial court committed an error of law or an abuse of discretion. We do not usurp the trial court's fact-finding function." *Laudig v. Laudig*, 624 A.2d 651, 653 (Pa. Super. 1993) (citations omitted). Additionally, "[p]renuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts." *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990) (citation omitted). "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Id.*

When interpreting a prenuptial agreement, the court, as in dealing with an ordinary contract, must determine the intention of the

parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement.

> Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing.

***Raiken v. Mellon***, 582 A.2d 11, 13 (Pa. Super. 1990) (citations omitted). Moreover, the fact that parties have different interpretations of a prenuptial agreement does not render the contract ambiguous. ***Tuthill v. Tuthill***, 763 A.2d 417, 420 (Pa. Super. 2000).

Instantly, the court first looked to one of the other two times that the word "financial"[5] is used in the Agreement to gain a better understanding of how the parties' intended the term to be interpreted. In particular, the court analyzed the term "financial resources," found within the section of the Agreement dealing with the marital residence/Property. The trial court found that the parties "inferred" or understood the following during their marriage: (1) the utilities/amenities offered by a provider and for the benefit of the marital home would only continue to be offered where timely payment was made by the parties to satisfy same; (2) the parties divided joint living expenses between themselves by making cash payments from jointly or separately held accounts or with a credit card with *readily available funds*; and (3) the parties understood that in order to maintain their home, bills needed

---

[5] The word "financial" is used in the "Full Disclosure" section of the Agreement, wherein it states that "[t]he parties acknowledge that they have had sufficient time to review the financial disclosures, especially as they may relate to the terms and conditions contained within this [A]greement, and that all questions and inquiries concerning these assets have been satisfied and understood prior to the execution of this [A]greement." Agreement, 2/15/08, at 11.

to be paid timely and with an acceptable and *easily accessible form of payment*. **See** Trial Court Opinion, 9/13/24, at 5-6 (unpaginated).

Based upon these inferences, the court determined that the parties intended the term "**financial** resource" to refer only to monetary assets and that the parties "likely understood" that the term "financial" equated to a money or cash reserve held in a financial account. **Id.** at 6. Relying in large part upon this interpretation, the court agreed with Husband's position that "the parties['] financial net worth should also be interpreted to mean the total value of their monetary accounts." **Id.** at 6 (unpaginated). Moreover, the court concluded that because the Agreement provided that, in the event of a divorce, the marital residence was considered "separate property," any value associated with the marital residence or real estate owed to Wife is not an asset included in the parties' "financial net worth." **Id.**

While acknowledging that the Agreement uses the term "net worth" to refer to the parties' assets in the Schedules, the court concluded that "the parties purposefully used the term 'financial net worth' in the alimony section of the [A]greement, thus clearly assigning it a different meaning than 'net worth.'" Trial Court Rule 1925(a) Opinion, 2/28/25, at 3. Specifically, the court determined that "when the parties referred to their financial resources used to pay for joint living expenses during the marriage, **see** Agreement[, 2/15/08,] at 6, they were referring to monetary assets[, and, t]hus, it is clear that the parties intended 'financial net worth' to mean just that, their monetary assets." **Id. See** Husband's Response to Wife's Petition to Interpret

Agreement, 7/1/24, at 2 ("[T]he financial assets of the parties—their 'money'—[] excludes the parties' real estate holdings and other personal property items that are not monetary in nature or easily convertible into cash."); **see also** Husband's Brief in Response to Wife's Reply Brief, 8/12/24, at 1 ("'Net worth' includes a comprehensive listing of everything of value owned by a person or entity, while 'financial net worth' is a more restrictive term that includes only assets and accounts readily convertible to cash."). Accordingly, the court did not accept Wife's invitation to apply the parol evidence rule to accept oral testimony regarding the intent of the parties under the Agreement. **See Harvey v. Harvey**, 167 A.3d 6, 12 (Pa. Super. 2017) (only when words or contract are ambiguous are courts free to consider extrinsic evidence).

Notably, the parties did not include the word "financial" before the term "net worth" to describe the assets included in the parties' Schedules. Our courts have routinely recognized the basic principle that specific language in a contract controls over general language. **See Trombetta v. Raymond James Financial Services, Inc.**, 907 A.2d 550, 560 (Pa. Super. 2006) (citations omitted) ("Furthermore, the specific controls the general when interpreting a contract."). Under the Agreement, "Separate Property" includes assets owned by the parties prior to their marriage or any assets acquired by them after the date of separation. **See** Agreement, 2/15/08, at 3. By comparison, financial net worth is a more specific term used to include those separately held liquid assets that are easily convertible to cash. As Husband

points out, because alimony is a payment from one spouse to another to meet reasonable monthly expenses, it is reasonable that Husband would need assets that were easily convertible to cash to make such payments.

Based upon the language of the Agreement, read as a whole, we do not find that the trial court committed an error of law or abuse of discretion when it interpretated the term "financial net worth" to include only those assets comprised of cash or readily convertible into cash. *Laudig*, *supra*. *See Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) ("In cases of a written contract, the intent of the parties is the writing itself.") (citation omitted). *See also SBA Towers II LLC v. Wireless Holdings*, 231 A.3d 901, 908 (Pa. Super. 2020) (citation omitted) (Additionally, "[i]f left undefined, the words of a contract are to be given their ordinary meaning."). The parties "fully disclosed" their separate assets and net worth to each other in the Agreement. *See* Agreement, 2/15/08, at 10. *See also Paroly v. Paroly*, 876 A.2d 1061, 1067 (Pa. Super. 2005) (case law provides where circumstances indicate spouse has general knowledge of value of couple's assets, agreement will be upheld where it recites full and fair disclosure was made). They also deliberately designated the terms used within the different sections of the Agreement based on their own understanding of those terms. It is disingenuous for Wife to ask us now to reinterpret those terms.[6]

---

[6] Notably, the parties agreed that the interpretation of the term "financial net worth" would be decided by briefing and not via oral argument or at a hearing. *See* Order, 5/1/24, at 1.

Finally, had the parties intended *all* assets be interpreted synonymously, they could have used consistent terms in the alimony (separate property) and marriage residence (joint property) sections of the Agreement. ***See Simeone***, ***supra*** at 166 (even if party did not fully understand terms of prenuptial agreement, terms of prenuptial agreement still binding).[7] They chose not to do so, and we can discern no error of law or abuse of discretion on the part of the trial court in its interpretation of the Agreement.

Decree affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/07/2025

_____

[7] Additionally, the parties mutually agreed that, within 60 days after the court's final decision on Wife's petition, as per the "Marriage Residence" section of the parties' Agreement, Husband shall pay Wife a lump sum of $50,370.82. This amount represented the monies Wife was due based on the net market value of the Property and the length of time that the parties remained married and resided together at the Property. ***See*** Agreement, 2/15/08, at 5. The parties used the June/July 2022 timeframe to determine the length of the parties' marriage. ***See supra*** n.2.